[No. 19196.   In Bank.—October 10, 1893.]

## SAN DIEGO WATER COMPANY, APPELLANT, *v.* SAN DIEGO FLUME COMPANY, RESPONDENT.

CONTRACT FOR WATER SUPPLY—UNAUTHORIZED TRANSFER OF RIGHTS TO CITY—RIGHT TO DETERMINE OPERATING EXPENSE.—A contract between a flume company and a water company for the furnishing of a water supply for domestic use by the inhabitants of a city, for the term of twenty years, and for a sharing in the proceeds of the sales of water after deducting operating expenses of the plants within the city, to be determined by trustees, does not give to the water company the right to make a contract of lease of all of its rights to third persons, with the understanding that they were to sub-lease or transfer those rights to the city, so as to give the city the power to determine what the operating expenses shall be.

ID.—RIGHT TO STOP FURNISHING WATER—INJUNCTION—ACCOUNTING.— While the water company insisted upon its rights under the unauthorized contract with the city the flume company had the right to stop furnishing its water, and the water company has no legal remedy by injunction to compel the flume company to continue its supply of water under the original contract; nor is it entitled to any accounting based upon the contract with the city.

ID.—ENCOURAGEMENT OF CONTRACT BY MEMBERS OF CORPORATION—ESTOPPEL—RATIFICATION.— The fact that some of the members of the flume company may have encouraged the contract with the city cannot estop the corporation from objecting to such contract, there being no valid ratification of the contract by the corporation.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Works & Works,* for Appellant.

A corporation may bind itself by an agreement to extend or improve the plant or property of another corporation where such plant or property is to be used for the purposes of carrying out the purposes of the incorporation of such contracting company. (*Ellerman* v. *Chicago Junc. Ry. etc. Co.,* 49 N. J. Eq. 217; *Union Water Co.* v. *Murphy's Flat Fluming Co.,* 22 Cal. 621; *Sutro Tunnel Co.* v. *Segregated etc. Mining Co.,* 19 Nev. 121; *Leslie* v. *Lorillard,* 110 N. Y. 519; 1 Wood's Ry. Law, 491–99; *Bissell* v. *Michigan etc. R. R. Co.,* 22 N. Y. 259, 269;

*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159, 185; *Chicago etc. R. R. Co.* v. *Pullman South Car Co.*, 139 U. S. 79; *Elkins* v. *Camden etc. Ry. Co.*, 36 N. J. Eq. 241; *Central Shade Roller Co.* v. *Cushman*, 143 Mass. 353; *State, New Jersey R. R. etc. Co.* v. *Hancock*, 35 N. J. L. 537, 546; *Miners' Ditch Co.* v. *Zellerbach*, 37 Cal. 543; 99 Am. Dec. 300; *Sussex R. R. Co.* v. *Morris etc. R. R. Co.*, 19 N. J. Eq. 13.) The contract of November 6, 1890, did not create a partnership between the parties to the agreement. (*Hanna* v. *Flint*, 14 Cal. 74; *Wheeler* v. *Farmer*, 38 Cal. 203; *Loomis* v. *Marshall*, 12 Conn. 69; 30 Am. Dec. 596, 608; *Boyce* v. *Brady*, 61 Ind. 432; *Keiser* v. *State*, 58 Ind. 379, 383; *Stuart* v. *Adams*, 89 Cal. 367; *Smith* v. *Schultz*, 89 Cal. 526; *Harvey* v. *Childs*, 28 Ohio St. 319; 22 Am. Rep. 387; 17 Am. & Eng. Ency. of Law, 845.) The contract between plaintiff and Howard and others is undoubtedly valid, but even if it be conceded that it is invalid the defendant corporation has ratified it and is estopped to plead that it was *ultra vires*. (*Sussex R. R. Co.* v. *Morris etc. R. R. Co.*, 19 N. J. Eq. 13–24; *Heims Brewing Co.* v. *Flannery*, 137 Ill. 309; *Fort Worth Publishing Co.* v. *Hitson*, 80 Tex. 216; *State Board* v. *Citizens Ry. Co.*, 47 Ind. 407; 17 Am. Rep. 702; *Bradley* v. *Ballard*, 55 Ill. 413, 417; 8 Am. Rep. 656; *Oil Creek etc. R. R. Co.* v. *Pennsylvania Transportation Co.*, 83 Pa. St. 160; *Main* v. *Casserly*, 67 Cal. 127; *Hall* v. *White*, 123 Pa. St. 95; *Latham* v. *First Nat. Bank*, 40 Kan. 9; *Raymond* v. *Palmer*, 41 La. Ann. 425; 17 Am. St. Rep. 398; *Mason* v. *Caldwell*, 10 Ill. 196; 48 Am. Dec. 330; *Metcalf* v. *Williams*, 144 Mass. 452; *Sax* v. *Drake*, 69 Iowa, 760, 762; *Karns* v. *Olney*, 80 Cal. 90, 99; 13 Am. St. Rep. 101; *Sartwell* v. *Frost*, 122 Mass. 184; *Berger's Appeal*, 96 Pa. St. 443; *Charles River Bank* v. *Davis*, 100 Mass. 413; *Walworth County Bank* v. *Farmers' Loan & Trust Co.*, 16 Wis. 629; *Jones* v. *Clark*, 42 Cal. 180; *Merrill* v. *Parker*, 112 Mass. 250; *Henderson* v. *Cummings*, 44 Ill. 325; *France* v. *Haynes*, 67 Iowa, 139; *Ruggles* v. *Washington Co.*, 3 Mo. 496; *Livings* v. *Wiler*, 32 Ill. 387; *Hamlin* v. *Sears*, 82 N. Y. 327; *Zabriskie* v. *Cleveland etc. R. R. Co.*,

23 How. 381; *Chicago etc. R. R. Co. v. Pullman Southern Car Co.*, 139 U. S. 79; *Sutro Tunnel Co.* v. *Segregated etc. Mining Co.*, 19 Nev. 121; *Diamond Match Co.* v. *Roeber*, 106 N. Y. 473; 60 Am. Rep. 464; *Leslie* v. *Lorillard*, 110 N. Y. 519; 1 Wood's Ry. Law, 491, 502, 517; *Bissell* v. *Michigan etc. R. R. Co. et. al.*, 22 N. Y. 259, 269; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159, 185; *Louisville etc. R. R. Co.* v. *Literary Society of St. Rose*, 91 Ky. 395; *Elkins* v. *Camden etc. R. R. Co.*, 36 N. J. Eq. 241; *Central Shade-Roller Co.* v. *Cushman*, 143 Mass. 353; *State, New Jersey, R. R. etc. Co.* v. *Hancock*, 35 N. J. L. 537, 546; *Indianapolis Rolling Mill* v. *St. Louis etc. R. R. Co.*, 120 U. S. 256; *Gold Mining Co.* v. *National Bank*, 96 U. S. 640; *Hughes* v. *First Nat. Bank*, 110 Pa. St. 428; *Pneumatic Gas Co.* v. *Berry*, 113 U. S. 322; *Witter* v. *Grand Rapids Flouring Mill Co.*, 78 Wis. 543; *Sheldon H. B. Co.* v. *Eickemeyer H. B. M. Co.*, 90 N. Y. 612; *Darst* v. *Gale*, 83 Ill. 136; *Underhill* v. *Santa Barbara etc. Co.*, 93 Cal. 300; *Gloucester etc. Co.* v. *Russia etc. Co.*, 154 Mass. 92; 26 Am. St. Rep. 214; *De Groff* v. *American L. T. Co.*, 21 N. Y. 126; *Parish* v. *Wheeler*, 22 N. Y. 502; *Sherman* v. *Fitch*, 98 Mass. 59, 64; *Kelsey* v. *National Bank*, 69 Pa. St. 426, 429; *Creswell* v. *Lanahan*, 101 U. S. 348; *Chicago Building Society* v. *Crowell*, 65 Ill. 453, 458; *Kelley* v. *Newburyport etc. R. R. Co.*, 141 Mass. 496; *Scammon* v. *Wells, Fargo & Co.*, 84 Cal. 311, 314; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62, 68; 20 Am. Rep. 504; *Chapman* v. *Mad River etc. R. R. Co.*, 6 Ohio St. 136; *Thompson* v. *Lambert*, 44 Iowa, 239; *Flynn* v. *Des Moines etc. Ry. Co.*, 63 Iowa, 490, 495; *Wright* v. *Boynton,* 37 N. H. 9; 72 Am. Dec. 319, 322; *Clark* v. *Van Riemsdyk*, 9 Cranch, 153; *Conant* v. *Bellows Falls Canal Co.*, 29 Vt. 263, 272, and note; *Farmers' Loan & Trust Co.* v. *Walworth*, 1 N. Y. 433, 443; *Drakely* v. *Gregg*, 8 Wall. 242; *Hauss* v. *Niblack*, 80 Ind. 407; *Clark* v. *Gordon*, 121 Mass. 330; *Avila* v. *Manhattan Chem. Co.*, 32 Hun, 1; *Runals* v. *Brown*, 11 Wis. 185; *Starks* v. *Sikes*, 8 Gray, 609; 69 Am. Dec. 270; *Ohio etc. R. R. Co.* v. *Middleton*, 20 Ill. 629; *Chamberlain* v. *Collinson*, 45 Iowa, 429; *Brigham*

v. *Palmer*, 3 Allen, 450; *Peters* v. *Ballister*, 3 Pick. 495, 504; *Sartwell* v. *Frost*, 122 Mass. 184; *Little* v. *Stettheimer*, 13 Mo. 572; *Berger's Appeal*, 96 Pa. St. 446; *Mason* v. *Caldwell*, 10 Ill. 196; 48 Am. Dec. 330, 332; *Burgess* v. *Harris*, 47 Vt. 322; *Smith* v. *Pinney*, 32 Vt. 282; *United States Ex. Co.* v. *Rawson*, 106 Ind. 215; *Keeler* v. *Salisbury*, 33 N. Y. 648; *Peninsular Bank* v. *Hanmer*, 14 Mich. 208; *Goss* v. *Stevens*, 32 Minn. 472; *Shaver* v. *Bear River etc. Co.*, 10 Cal. 396; *Borel* v. *Rollins*, 30 Cal. 409, 413; *Pixley* v. *Western P. R. R. Co.*, 33 Cal. 183; 91 Am. Dec. 623; *Brigham* v. *Peters*, 1 Gray, 139, 147; *Harrod* v. *McDaniels*, 126 Mass. 413; *Union G. Mining Co.* v. *Rocky Mountain Nat. Bank*, 2 Col. 248; *Irons* v. *Reyburn*, 11 Ark. 378, 386; *Breed* v. *First Nat. Bank*, 6 Col. 235; *Middlebury College* v. *Williamson*, 1 Vt. 220; *Bigelow* v. *Denison*, 23 Vt. 564; *Grogan* v. *San Francisco*, 18 Cal. 590, 609; *Hankins* v. *Baker*, 46 N. Y. 666; *Bartlett* v. *Tucker*, 104 Mass. 336, 341; 6 Am. Rep. 240; *Merrifield* v. *Parritt*, 11 Cush. 590, 597; *McIntyre* v. *Park*, 11 Gray, 102, 106; 71 Am. Dec. 690; *Durham* v. *Carbon C. & M. Co.*, 22 Kan. 232; *Pike* v. *Douglass*, 28 Ark. 59; *Strasser* v. *Conklin*, 54 Wis. 102; *Newell* v. *Hurlburt*, 2 Vt. 351; *Miles* v. *Ogden*, 54 Wis. 573; *Coykendall* v. *Constable*, 99 N. Y. 309; *Rogers* v. *Empkie Hardware Co.*, 24 Neb. 653; *McArthur* v. *Home Life Assn.*, 73 Iowa, 336; 5 Am. St. Rep. 684; *Shoninger* v. *Peabody*, 57 Conn. 42; 14 Am. St. Rep. 88; *Belleville Sav. Bank* v. *Winslow*, 35 Fed. Rep. 471; *Vermont State Baptist Convention* v. *Ladd*, 58 Vt. 95; *Windham Provident Inst.* v. *Sprague*, 43 Vt. 502; *Elwell* v. *Chamberlin*, 31 N. Y. 611, 619; *Fowler* v. *New York Gold Exchange Bank*, 67 N. Y. 138; *Brainerd* v. *Dunning*, 30 N. Y. 211; *Peterson* v. *Mayor etc.*, 17 N. Y. 449; *Northwestern Iron Co.* v. *Ætna Ins. Co.*, 26 Wis. 78; *Reid* v. *Hibbard*, 6 Wis. 174, 188; *Ballston Spa Bank* v. *Marine Bank*, 16 Wis. 120; *Beidman* v. *Goodell*, 56 Iowa, 592; *Farwell* v. *Meyer*, 35 Ill. 41, 52; *Booth* v. *Wiley*, 102 Ill. 84, 106; *San Francisco Gas Co.* v. *City of San Franciso*, 9 Cal. 453, 470; *Greenfield Bank* v. *Crafts*, 4 Allen, 447; *Forsyth* v. *Day*, 46 Me. 176; *Swain* v. *Seamens*, 9

Wall. 254;  *Coffin* v. *Gephart,* 18 Iowa, 256;  *Nicoll* v. *Burke,* 78 N. Y. 580;  *Briggs* v. *Partridge,* 64 N. Y. 357; 21 Am. Rep. 617;  *Herriott* v. *Kersey,* 69 Iowa, 111; *Lyon* v. *Tams,* 11 Ark. 189;  *Morgan* v. *Railroad Co.,* 96 U. S. 716;  *Foster* v. *Rockwell,* 104 Mass. 167;  *Corning* v. *Southland,* 3 Hill, N. Y., 552;  *Cairnes* v. *Bleecker,* 12 Johns. N. Y., 300, 305;  *Meyer* v. *Morgan,* 51 Miss. 21;  24 Am. Rep. 617;  *Francis* v. *Kerker,* 85 Ill. 190;  *Nesbitt* v. *Helser,* 49 Mo. 383;  *Gilmore* v. *Wilbur,* 12 Pick. 120;  22 Am. Dec. 410;  *Workman* v. *Guthrie,* 29 Pa. St. 495;  72 Am. Dec. 654, 657;  *Moore* v. *Pendleton,* 16 Ind. 481; *Chautauqua Co. Bank* v. *White,* 6 Barb. 589, 604;  *Engle* v. *Burns,* 5 Call, 463;  2 Am. Dec. 593, 598;  *Field* v. *Doyon,* 64 Wis. 560;  *Guffey* v. *O'Reiley,* 88 Mo. 418;  57 Am. Rep. 424, 429;  *Niven* v. *Belknap,* 2 Johns. 573, 586; *Storrs* v. *Barker,* 6 Johns. Ch. 166;  10 Am. Dec. 316; *Hall* v. *Fisher,* 9 Barb. 17, 30;  *Cady* v. *Owen,* 34 Vt. 598; *Trenton Banking Co.* v. *Duncan,* 86 N. Y. 221, 229;  *Bleven* v. *Freer,* 10 Cal. 172;  *Dresbach* v. *Minnis,* 45 Cal. 223; *Henderson* v. *Overton,* 2 Yerg. 394;  24 Am. Dec. 492; *Godeffroy* v. *Caldwell,* 2 Cal. 489;  56 Am. Dec. 360;  *Bryan* v. *Ramirez,* 8 Cal. 462;  68 Am. Dec. 340;  *Baehr* v. *Wolf,* 59 Ill. 470, 477;  *Baird* v. *Jackson,* 98 Ill. 78;  *Slocumb* v. *Chicago etc. R. R. Co.,* 57 Iowa, 675, 680;  *Walton* v. *Minturn,* 1 Cal. 362;  *Ferguson* v. *Miller,* 4 Cal. 97;  *Snodgrass* v. *Ricketts,* 13 Cal. 360;  *Jones* v. *Clark,* 42 Cal. 180, 193; *Schenck* v. *Sautter,* 73 Mo. 46;  *Young* v. *Babilon,* 91 Pa. St. 280;  *Chapman* v. *Chapman,* 59 Pa. St. 214;  *Commonwealth* v. *Moltz,* 10 Pa. St. 527, 530;  51 Am. Dec. 499; *Gallinger* v. *Lake Shore Traffic Co.,* 67 Wis. 529;  *Hamilton* v. *Phœnix Ins. Co.,* 106 Mass. 395;  *Vaughn* v. *Sheridan,* 50 Mich. 155.)  The city had power to contract with the water company to pay a montly sum for water, covering the time fixed by the contract although the aggregate sum exceeded the revenue for the year in which the contract was made.  (*Dively* v. *City of Cedar Falls,* 27 Iowa, 227, 233;  *Grant* v. *City of Davenport,* 36 Iowa, 396;  *City of East St. Louis* v. *East St. Louis Gaslight & Coke Co.,* 98 Ill. 415, 429;  38 Am. Rep. 97;  *City*

*of Valparaiso* v. *Gardner*, 97 Ind. 1; 49 Am. Rep. 416.) The contention that no "official" action was ever taken by the board of directors, and therefore it cannot be estopped, is without merit, as corporations are estopped, precisely as individuals are estopped, either by acting or failing to act, and for the same reasons. (*Shaver* v. *Bear River etc. Water Co.*, 10 Cal. 396; *Borel* v. *Rollins*, 30 Cal. 409; *Sheldon H. B. Co.* v. *Eickemeyer etc. Co.*, 90 N. Y. 607; *Zabriskie* v. *Cleveland etc. R. R. Co.*, 23 How. 381; *Chicago etc. R. Co.* v. *Pullman South Car Co.*, 139 U. S. 79; *Scott* v. *Jackson*, 89 Cal. 258; *Woodward* v. *Harlow*, 28 Vt. 338; *Miners' Ditch Co.* v. *Zellerbach*, 37 Cal. 543, 586, 603; 99 Am. Dec. 300; *Heims Brewing Co.* v. *Flannery*, 137 Ill. 309; *Fort Worth Pub. Co.* v. *Hitson*, 80 Tex. 216; *State Board* v. *Citizens' St. Ry. Co.*, 47 Ind. 407, 411; 17 Am. Rep. 702; *Bradley* v. *Ballard*, 55 Ill. 413, 417; 8 Am. Rep. 656; *Oil Creek etc. R. R. Co.* v. *Pennsylvania Trans. Co.*, 83 Pa. St. 160, 166; *Main* v. *Casserly*, 67 Cal. 127; *Raymond* v. *Palmer*, 41 La. Ann. 425; 17 Am. St. Rep. 398; *Mason* v. *Caldwell*, 11 Ill. 196; 48 Am. Dec. 330; *Metcalf* v. *Williams*, 144 Mass. 452; *Sax* v. *Drake*, 69 Iowa, 760, 762; *Sartwell* v. *Frost*, 122 Mass. 184; *Berger's Appeal*, 96 Pa. St. 443; *Charles River Nat. Bank* v. *Davis*, 100 Mass. 413; *Walworth Co. Bank* v. *Farmers' Loan & T. Co.*, 16 Wis. 629; *Jones* v. *Clark*, 42 Cal. 180; *Merrill* v. *Parker*, 112 Mass. 250; *Henderson* v. *Cummings*, 44 Ill. 325; *France* v. *Haynes*, 67 Iowa, 139; *Ruggles* v. *Washington Co.*, 3 Mo. 496; *Livings* v. *Wiler*, 32 Ill. 387; *Kelsey* v. *National Bank*, 69 Pa. St. 426, 429; *Underhill* v. *Santa Barbara etc. Co.*, 93 Cal. 300; *Creswell* v. *Lanahan*, 101 U. S. 347; *Kent* v. *Quicksilver Min. Co.*, 78 N. Y. 159; *Witter* v. *Grand Rapids Flouring Mill Co.*, 78 Wis. 543; *Hotel Co.* v. *Wade*, 97 U. S. 13; *Gold Min. Co.* v. *National Bank*, 96 U. S. 640.)

*V. E. Shaw, Hunsaker, Britt & Goodrich*, and *Shaw & Holland*, for Respondent.

The agreement of November 6, 1890, is invalid, as the corporation had no power to make it. (*Vandall* v. *South*

*S. F. Dock Co.*, 40 Cal. 83; Morawetz on Corporations, sec. 316; *Thomas* v. *Railroad Co.*, 101 U. S. 71; *Oregon Ry. and Nav. Co.* v. *Oregon Ry. Co.*, 130 U. S. 1; *Central Trans. Co.* v. *Pullman's Palace Car Co.*, 139 U. S. 24.) The active affairs of the corporation are vested in the board of directors. (Morawetz on Corporations, secs. 510, 514; *Gashwiler* v. *Willis,* 33 Cal. 11; 91 Am. Dec. 607; *Bank of Healdsburg* v. *Bailhache*, 65 Cal. 327.) The corporation had no authority to delegate the powers conferred upon the directors, as was done by the agreement of November 6th. (Civil Code, sec. 354; Morawetz on Corporations, secs. 514, 536.) The policy of the state is toward the prevention of monopolies, so far as the furnishing of light and water to cities and their inhabitants is concerned. (*People* v. *Stephens*, 62 Cal. 209; *People* v. *Chicago Gas Trust Co.*, 130 Ill. 268; 17 Am. St. Rep. 319; *McCrary* v. *Beaudry*, 67 Cal. 120.) The agreement of November 6th is invalid, as it is an attempt to divest each of the corporations of their right to collect water rates. Any attempt on the part of a corporation to divest itself of its franchise and thus disable itself from performing its duties to the public without legislative authority is *ultra vires*, and void. (*Wood* v. *Truckee Turnpike Co.*, 24 Cal. 474; *Oregon Ry. and Nav. Co.* v. *Oregon Ry. Co.*, 130 U. S. 1; *Central Trans. Co.* v. *Pullman's Palace Car Co.*, 139 U. S. 24; *Pennsylvania R. R. Co.* v. *St. Louis etc. R. R. Co.*, 118 U. S. 290; *Thomas* v. *Railroad Co.*, 101 U. S. 71; *Randolph* v. *Larned*, 27 N. J. Eq. 557; *Troy etc. R. R. Co.* v. *Boston etc. Ry. Co.*, 86 N. Y. 107; *Fanning* v. *Osborne*, 102 N. Y. 441; *Peoria etc. Ry. Co.* v. *Coal Valley M. Co.*, 68 Ill. 489; *Richardson* v. *Sibley*, 11 Allen, 65; 87 Am. Dec. 700; *Middlesex R. R. Co.* v. *Boston etc. R. R. Co.*, 115 Mass. 347; *Stewart's Appeal*, 56 Pa. St. 413; *Gibbs* v. *Drew*, 16 Fla. 147; 26 Am. Rep. 700; Ray on Contractual Limitations, 273, 278.) This agreement is also *ultra vires* and illegal, for the reason that it undertakes to constitute the parties partners in the business of furnishing water to the city of San Diego and its inhabitants. It is well settled that

C. Cal.—4

corporations cannot, without legislative authority, enter into such an arrangement. (1 Morawetz on Corporations, sec. 421; 2 Beach on Corporations, sec. 843; Ray on Contractual Limitations, sec. 56; *People* v. *North River Sugar Refining Co.*, 121 N. Y. 582; 18 Am. St. Rep. 843; *Mallory* v. *Hanaur Oil Works*, 86 Tenn. 598; *People* v. *North River Sugar Refining Co.*, 54 Hun, 355; *Pearce* v. *Madison etc. R. R. Co.*, 21 How. (U. S.) 441; *Burke* v. *Concord Railroad Corp.*, 62 N. H. 531.) The agreement is contrary to public policy, for the reason that it is a combination between the parties for the purpose of creating a monopoly for the sale of water to the city of San Diego and its inhabitants. (*Pacific Factor Co.* v. *Adler*, 90 Cal. 110; 25 Am. St. Rep. 102; *Santa Clara Valley Mill and Lumber Co.* v. *Hayes*, 78 Cal. 387; Ray on Contractual Limitations, pp. 212, 213, 234, 238, and the numerous cases cited by Judge Ray; *Richardson* v. *Buhl*, 77 Mich. 632.) The general rule that contracts in partial restraint of trade are not invalid does not apply to corporations engaged in a public business in which the public are interested. Such corporations cannot be allowed, by contract, to disable themselves, even partially, in the discharge of duties of a public nature, the performance of which is beneficial to the public. Any private contract by them which is injurious or prejudicial to the public interest is void, on the ground of public policy. (*Chicago Gas Light Co.* v. *People's Gas Light Co.*, 121 Ill. 530; 2 Am. St. Rep. 124; *People* v. *Chicago Gas Trust Co.*, 130 Ill. 268; 17 Am. St. Rep. 319; *Gibbs* v. *Consolidated Gas Co.*, 130 U. S., 396; *West Virginia Trans. Co.* v. *Ohio River Pipe Line Co.*, 22 W. Va. 600; 46 Am. Rep., 527; *Thomas* v. *West Jersey R. R. Co.*, 101 U. S. 71; *Central Transportation Co.* v. *Pullman's Palace Car Co.*, 139 U. S. 24.) The illegal purpose of the agreement being disclosed, a court of equity should interfere, whether the shelter be under form of partnership of individuals or of the corporations. (Ray on Contractual Limitations, pp. 234, 279; *Stockton* v. *Central R. R. Co.*, 50 N. J. Eq. 52; *People* v. *North*

*River Sugar Ref. Co.*, 54 Hun, 354.) These corporations not having had the power to enter into the agreement it is void *in toto*, and the corporation may avail itself of the plea of *ultra vires*. (*Miners' Ditch Co.* v. *Zellerbach*, 37 Cal, 543; 99 Am. Dec. 300; *Thomas* v. *Railroad Co.*, 101 U. S. 82; *Central Trans. Co.* v. *Pullman's Palace Car Co.*, 139 U. S. 24.) By the provisions of the constitution the function of fixing the compensation which may be collected by persons or corporations for water furnished to a city or its inhabitants is vested in the governing body of the city, and is made a legislative act, which must be exercised annually, and the city cannot, by agreement, abdicate or abridge its legislative powers. (*Spring Valley Water Works* v. *San Francisco*, 52 Cal. 111; *Spring Valley Water Works* v. *Bryant*, 52 Cal. 132; *Spring Valley Water Works* v. *Bartlett*, 63 Cal. 245.) The constitution and charter having prescribed the mode of obtaining water, the mode is the measure of the city's power, and must be observed; and the contract between the city and Howard, by which the city undertook to contract for water in disregard thereof, is of no binding force or validity. (*San Diego Water Co.* v. *San Diego*, 59 Cal. 517; *Douglass* v. *Mayor*, 18 Cal. 643; *Zottman* v. *San Francisco*, 20 Cal. 97; 81 Am. Dec. 96; *Herzo* v. *San Francisco*, 33 Cal. 134; *McCoy* v. *Briant*, 53 Cal. 247.) The contract is illegal and void for the reason that it violates sec. 18, art. XI, of the constitution, and secs. 11, 12 (Stats. of 1889, p. 658), and 15 (Stats. of 1889, p. 659), of chap. 2 of art. II and sec. 12 (Stats. of 1889, p. 709), of chap. 2 of art. VI of the charter of the city. Each year's debts and liabilities must be paid out of the income of the year during which the same were incurred. (*San Francisco Gas Co.* v. *Brickwedel*, 62 Cal. 641; *Shaw* v. *Statler*, 74 Cal. 258; *Schwartz* v. *Wilson*, 75 Cal. 502; *Mayrhofer* v. *Board of Education*, 89 Cal. 110; 23 Am. St. Rep. 451; *Niles Water Works Co.* v. *Mayor etc.*, 59 Mich. 311; *Smith* v. *City of Newburgh*, 77 N. Y. 130; *Wallace* v. *Mayor of San Jose*, 29 Cal. 180; *Prince* v. *City of Qunicy*, 128 Ill. 443;

*Spilman* v. *City of Parkersburg*, 35 W. Va. 605.) The contract between the city and Howard and others is void, for the further reason that it disabled the city, for the term of twenty years, from acquiring its own works or contracting with any other person for a water supply, and gave to the San Diego Water Company a monopoly of supplying water to the city for that time. (*Garrison* v. *City of Chicago*, 7 Biss. 480; *City of Brenham* v. *Brenham Water Co.*, 67 Tex. 542; *Syracuse Water Co.* v. *City of Syracuse*, 116 N. Y. 177; *Grand Rapids etc. Co.* v. *Grand Rapids etc. Co.*, 33 Fed. Rep. 659; *Saginaw Gas Light Co.* v. *City of Saginaw*, 28 Fed. Rep. 529; *Jackson County H. R. Co.* v. *Interstate etc. Ry. Co.*, 24 Fed. Rep. 306; *Richmond County Gas Light Co.* v. *Town of Middleton*, 59 N. Y. 228; *State* v. *Cincinnati Gas etc. Co.*, 18 Ohio St. 262; *Altgelt* v. *City of San Antonio*, 13 Law Rep. Anno. 383.) Respondent did not approve or ratify the agreement with the city. The respondent, being a corporation, could only act in this matter through its board of directors, when duly assembled, by resolution duly passed and recorded. (Civ. Code, secs. 305, 308; *Smith* v. *Dorn*, 96 Cal. 73; *Gashwiler* v. *Willis*, 33 Cal. 11; 91 Am. Dec. 607; *Alta S. M. Co.* v. *Alta Placer M. Co.*, 78 Cal. 629.) Respondent is not estopped from pleading the defense of *ultra vires*, as the attempted acts were beyond the powers of the corporation, and therefore illegal and void. (*Miners' Ditch Co.* v. *Zellerbach*, 37 Cal. 543; 99 Am. Dec. 300; *Thomas* v. *Railroad Co.*, 101 U. S. 82; *Central Trans. Co.* v. *Pullman's Palace Car Co.*, 139 U. S. 24.) A transaction, imbued with the fatal infirmity of being in violation of law, cannot be purged of its infirmity by means of an estoppel. (*Martin* v. *Zellerbach*, 38 Cal. 300; 99 Am. Dec. 365.) The contract being executory, and beyond the powers of the corporation, the defense of *ultra vires* was proper, although it might not have been if the contract had been executed. (*Nassau Bank* v. *Jones*, 95 N. Y. 115; 47 Am. Rep. 14; *Cent. Trans. Co.* v. *Pullman's Palace Car Co.*, 139 U. S. 57.) No misrepresentations having been made to the

appellant or its officers and it not having been deceived
there is no element of estoppel presented. (*Franklin* v.
*Dorland*, 28 Cal. 175; 87 Am. Dec. 111; *Martin* v. *Zeller-
bach*, 38 Cal. 300; 99 Am. Dec. 365; *Bowman* v. *Cud-
worth*, 31 Cal. 148; *Boggs* v. *Merced Mining Co.*, 14 Cal.
279.) The agreement upon which plaintiff bases its
right to relief being against public policy, and, there-
fore, illegal and void, a court of equity will not afford
relief to any of the parties thereto, but will leave them
to work out their own salvation. (Ray on Contractual
Limitations, p. 238; *Kreamer* v. *Earl*, 91 Cal. 112; *Vul-
can Powder Co.* v. *Hercules Powder Co.*, 96 Cal. 510; 31
Am. St. Rep. 242; *St. Louis etc. Co.* v. *Terre Haute etc.
R. R. Co.*, 145 U. S. 393; *Martin* v. *Wade*, 37 Cal. 168;
*Mitchell* v. *Cline*, 84 Cal. 409; *Hill* v. *Kidd*, 43 Cal. 615;
*Gridley* v. *Dorn*, 57 Cal. 78; 40 Am. Rep. 110.)

McFARLAND, J.—This action was brought by plaintiff
to enjoin the defendant from shutting off or preventing
the flow of water into certain mains and pipes of plain-
tiff. The court granted a nonsuit, and entered judg-
ment for defendant; from which judgment, and from
an order denying a motion for a new trial, plaintiff ap-
peals.

Each of the parties is a corporation organized under
the general laws of the state for the purpose of distrib-
uting, selling, and furnishing water to consumers in the
county and city of San Diego. The contracts and the
relations of the parties out of which this litigation came
are somewhat complicated. The main facts are as fol-
lows: In September, 1890, the respondent (the flume
company) was the owner of a supply of water, which it
brought from a long distance by means of ditches,
flumes, and pipes to the boundary of the city of San
Diego—or, as counsel put it "to the gates of the city";
but it had no pipes or other means within said city by
which it could distribute water to the inhabitants thereof.
The appellant (the water company) owned a system or
plant of pipes by which it could distribute water through

the greater part of the city which it had been using to partially supply the city with water pumped from sources in the immediate vicinity.   The respondent was negotiating with the city to sell or lease water to the latter, and an election had been called for the 14th of October, at which the electors of the city were to vote on the proposition of issuing bonds for that purpose.   The respondent was endeavoring to carry the election in favor of the bonds, and the appellant was opposing that proposition.   In the latter part of September the appellant and respondent agreed upon the proposition to unite their interests, and a memorandum of such agreement was made in writing, but was not fully executed.   After that the respondent ceased advocating the proposition of issuing the bonds.   On November 6, 1890, the appellant and respondent executed a written agreement which consisted of two parts, called in the pleadings exhibit A and exhibit B—these two instruments being intended as one agreement.   By exhibit A the respondent appointed the appellant "its sole agent for the exclusive sale of water within the corporate limits of the city of San Diego, California"; the appointment to continue during the continuance of the other part of the contract called exhibit B.  It was provided, however, that all sales made by the appellant should be subject to the approval of the respondent, and that no sales should be made without the consent of the latter.   Exhibit B is quite a long contract, and its principal features are these: The parties appoint one Babcock and one Sefton, the former being president of the appellant and the latter of respondent, as trustees, to whom they in terms "assign and give the absolute control of their respective properties, as far as the same may be confined to the corporate limits of the city of San Diego."   Said trustees were to hold in trust and "operate and control said respective properties for the benefit and use of the respective parties of the first and second part in the manner as herein mentioned."

It was stated that the parties were "to combine their

joint endeavor for the advancement of their respective interests under this trust, subject to the conditions as hereinafter mentioned." It was further provided that appellant should furnish "its entire plant and any extension of the same for the free use and occupation as the said trustees may determine for the uses and purposes of this contract." The respondent agreed "to deliver at a point in their flume or pipe line where the same does now or may hereafter intersect the present or future limits of the city of San Diego, a water supply of a good quality for domestic purposes sufficient for the uses of the city of San Diego." It was further agreed that, after deducting the operating expenses of the plants within the city, the proceeds of the sales of water should be divided between the parties in the proportion of sixty-five one-hundredths to the appellant, and thirty-five one-hundredths to the respondent; and it was provided that "operating expenses" should include necessary extensions of said plants; but it was also further provided that the said trustees should determine what were necessary and proper operating expenses. It was further provided that "this contract shall extend and be binding upon the parties hereto, their successors and assigns, for the term of twenty years, beginning on the sixth day of November, 1890." There were other provisions in the said exhibit B which we do not deem necessary to be here mentioned. The parties commenced operating under this agreement of November 9th, and continued to so operate until about the 1st of June, 1891.

On the thirteenth day of April, 1891, the appellant entered into a written contract with Bryant Howard and several other persons, called exhibit 1, by which the appellant in its own name leased to said Howard and others for the term of twenty years from and after the first day of June, 1891, all their water plant within said city, including all pipes, pipe lines, etc., and also sold and conveyed to said Howard and others three million gallons of water "from what is now known as

the San Diego flume," for each and every twenty-four
hours during said period of twenty years. (The said
"water from what is now known as the San Diego
flume" meant the said water supply of respondent, as
above referred to.)   By said contract Howard and others
agreed to pay to appellant during said period the sum
of nine thousand one hundred and sixty-five dollars
and sixty-five cents per month; and the appellant
agreed to accept in payment thereof the obligation of
the city of San Diego to pay and satisfy the same.   It
was further agreed that after the construction of a cer-
tain railroad, afterwards in said contract mentioned,
Howard and others should have the right to assign the
whole lease to the city of San Diego, and that the appel-
lant would look solely to said city for the carrying out
of the agreement on the part of Howard and others.
It was then stipulated that the lease was made upon the
condition that the appellant should cause a railroad to
be constructed and operated from the city of San Diego,
California, to San Quintin in the republic of Mexico, or
to Fort Yuma, California, or its immediate vicinity, al-
though it was also stated that "this provision shall not
be construed as obligating the party of the first part to
construct said road," it being sufficient under the con-
tract if the road should be built by some railroad com-
pany.   It was further agreed that should any extensions
of the pipe lines or plant of appellant in said city be
necessary, Howard and others, or their assigns or sub-
lessees, should have have the option to put in such
extensions; or they could require appellant to make
such extensions, in which case the appellant should be
allowed for the amount expended in such extensions
the sum of six per cent per annum interest.   It was
also stipulated that "for the deterioration of the exten-
sions of the pipe lines" Howard and others should pay
to appellant three per cent per annum on the cost of
such extensions; also that Howard and others should
have a right to terminate the lease in case any of the
conditions, stipulations, or agreements therein men-

tioned should not be complied with by appellant. The contract also had a general provision that Howard and others might sublease to the city of San Diego.

The contract last above referred to was made with the express understanding between the parties that Howard and Company were to sublease to the city of San Diego, or to make a contract with said city by which Howard and Company were to transfer to the city all the rights which they obtained under said contract with appellant. And in pursuance of said understanding, five days afterwards, to wit: on April 18, 1891, said Howard and others and said city did enter into a contract called exhibit 2. This contract referred to the said contract of April 13th, and provided that "this agreement is made upon the express condition that in case the contract above referred to shall be terminated under any of the conditions, stipulations, or agreements in said contract contained, then and in that case this contract shall at once cease and determine." This contract was substantially the same as the one made between appellant and Howard and others. By it Howard and others leased and sublet to the city for the period of twenty years from and after June 1, 1891, all the said plant or system of water-pipes owned by appellant in said city, and three million gallons of water every twenty-four hours from the San Diego flume, and provided that the city should pay appellant for the same as rental nine thousand one hundred and sixty-five dollars and sixty-five cents per month, which amounted to about one hundred and ten thousand dollars a year. It provided, also, for the six per cent and three per cent mentioned in said former contract, and provided further that if the city desired more than three million gallons per day, plaintiff should furnish the desired amount at the rate of five per cent per thousand gallons. It also provided that the city should determine the amount of extensions to be made to said system of pipes. There were other provisions which we do not deem it necessary to here notice.

There was some evidence tending to show that some of the directors and stockholders of the respondent had knowledge that the contract between Howard and others and appellant was to be made, and also that Howard and others were to make the said contract with the city, and did not object thereto, but rather encouraged the thing. There is no evidence, however, tending to show that the board of directors of the respondent at any of its meetings ever approved either of said contracts, or authorized any of its officers to take any action with respect to them. On the other hand, after the execution of said contract with the city, appellant requested the directors of the respondent to approve said contract, which the latter refused to do; and on the 18th of July, 1891, the directors of respondent passed a resolution which, after reciting the various contracts, expressly repudiated the contracts made by appellant to Howard and others, and the contract between Howard and others and the city. And between the 1st of June, 1891, and the date of said resolution the respondent did not receive any money from the appellant. After that respondent continued to furnish water as before until the 2d of May, 1892, claiming, however, to be acting under the original contract of November 6, 1890; but there were continuous difficulties, disagreements, and troubles between the appellant and the respondent, and on the said May 2, 1892, respondent disconnected its water with the mains of the appellant, and refused to furnish any more. Whereupon appellant brought this action to enjoin the respondent from thus shutting off the flow of water into the mains and pipes of appellant.

Upon the foregoing facts counsel discussed a number of important questions, which, under our view, need not be here determined; but in order to fully present the case, we will notice a few of such questions. Respondent contends, among other things, that the original agreement of November 6, 1890, was void, because it was against public policy, in that its purpose was to prevent the city from acquiring its own water supply,

and to obtain a monopoly of the business of furnishing water to the city for twenty years; because it undertook to take away from the directors of respondent all power over its business for twenty years, and to vest such power in two persons, one of whom was not even a member of the corporation respondent; because it undertook to form a partnership between the two corporations, and to consolidate said two corporations, which is not authorized, except in cases of railroad and mining corporations; and because the said contract was in other respects *ultra vires* in the broadest sense.   Respondent also contends that the contract beween appellant and Howard and others was void in many respects, and particularly because it was made in contemplation of the city of San Diego taking the place of Howard and others; and that the contract between Howard and Company and the city was void for many reasons, and particularly because under the constitution of the state it was the duty of the city to fix the rates of water furnished by appellant *annually;* and that the city had no right by one act to fix the rate of water for twenty years; also because the city council could not grant a subsidy.   All these propositions are contested by appellant.

Some of the foregoing propositions are of very great importance, and their unnecessary determination here might furnish precedents which would foreclose or embarrass the rights of future litigants without a hearing. We will not therefore determine those questions, because we think that the judgment should be affirmed for another reason.

Assuming that the contract of November 6, 1890, is a valid one, still we think that the rights of the respondent must be determined upon that contract alone.   That contract did not give to the appellant the right to make the contract with Howard and others; and certainly the contract between Howard and others and the city of San Diego is one which cannot bind respondent in any way.   And the two last-named contracts are essentially

different from the one of November, 1890. And one essential difference, which is important and substantial so far as the rights of respondent are concerned, is that the latter contract gives to the city of San Diego the right to determine what extensions should be made to appellant's system of pipes—what the *operating expenses* shall be; while the contract of November, 1890, vests that power entirely in the two trustees named therein. And the result of the said provision of the later contracts was one of the principal causes of difference between the two parties. Moreover, the six per cent and three per cent items in the later contracts were essentially different from anything contained in the contract of 1890. And as the appellant insisted upon its rights under the said contract with the city, the respondent had the right to stop furnishing its water, and appellant has no legal remedy by injunction to compel respondent to continue its supply of water, as provided for in the contract of November, 1890. And we do not think that the evidence shows any valid ratification of said later contracts by respondents.

Appellant contends that even if it be not entitled to an injunction a nonsuit should not have been granted, but that the court should have gone on and taken an accounting between the parties. The prayer of the complaint, in addition to asking an injunction, prays also for judgment against the respondent for ten thousand dollars damages, and also "that the rights of plaintiff and the defendant as to the division of the money realized from the amount received from the city under said sublease be ascertained and determined." But, certainly, appellant showed no case for damages against the respondent, and as the complaint proceeds upon the theory of the validity of the sublease to the city, we do not think that plaintiff is entitled to any accounting based upon the contract with the city. If it be true, as contended by appellant, that some of the members of the corporation respondent encouraged the contracts with Howard and others and with the city, appellant

may have some cause to complain of a want of fair dealing; but when corporate bodies are contracting with each other they should keep in remembrance the old saying of Lord Coke, that corporations have no souls.

The judgment and order denying a new trial are affirmed.

HARRISON, J., PATERSON, J., and FITZGERALD, J., concurred.