[Civ. No. 4114.  First Appellate District, Division Two.—March 11, 1922.]

ANNABEL WILLIAMS, etc., Respondent, v. FRANK D. WILLIAMS et al., Appellants.

[1] DIVORCE — DECREE OF ANNULMENT—APPEAL — PLEADING — MARRIAGE OF PARTIES—POINT WITHOUT MERIT.—On an appeal from a judgment annulling a decree of divorce, the complaint is not subject to attack for failure to allege by direct averment that the plaintiff and the defendant were husband and wife, where no attack was made upon the marriage during the introduction of the evidence, or in the specifications of the insufficiency of the evidence.

[2] ID.—MARITAL STATUS OF PLAINTIFF—IMPROPER CROSS-COMPLAINT.
In an action to annul a decree of divorce, a cross-complaint
setting up facts showing that the plaintiff had formerly been
the wife of another and that she was not legally divorced from
him was not a necessary or proper pleading on behalf of the
defendant.

[3] ID.—ANNULMENT OF DECREE—DAMAGES—PLEADING—JOINDER OF
CAUSES OF ACTION.—A cause of action to vacate a decree of
divorce alleged to have been obtained by fraud, and also to
recover damages from the defendant husband, may be joined
with a cause of action to recover damages from his codefendant.

[4] ID.—ATTACK UPON DECREE—PROCEDURE—BILL IN EQUITY.—The
plaintiff in an action to annul a decree of divorce did not err
in making her attack by filing a suit in equity instead of pro-
ceeding by motion, where it appeared that she did not know of
the entry of the decree until her return to the state, more than
one year after the filing of the final decree.

[5] ID.—COMMENCEMENT OF ACTION—LACHES.—The plaintiff in such
action was not guilty of laches where the action was commenced
within one month after she had acquired knowledge of the
entry of the decree.

[6] ID. — PUBLICATION OF SUMMONS — FALSE AFFIDAVIT—FRAUD.—The
false statement in an affidavit for publication of summons in
an action for divorce that the defendant "left" the state on a
stated date "for some place without the state of California un-
known to affiant," invalidated the affidavit and constituted a
fraud on the court.

[7] ID.—HUSBAND AS GUARDIAN OF INCOMPETENT WIFE — ACTION FOR
DIVORCE—CONCEALMENT OF FACT—FRAUD.—Where a husband who
was the guardian of the person and estate of his wife did not
call to the attention of the court either in his complaint for
divorce, or in the affidavit accompanying it, that he was suing
his ward and that his ward was an incompetent person on whom
a summons might not legally be served, he was guilty of a fraud-
ulent concealment.

[8] ID.—DAMAGES—ATTORNEY'S FEES.—In an action by a wife to
annul a decree of divorce obtained by fraud, she is not entitled
to recover, as an element of damage, the reasonable value of the
services of her attorney on the theory that by reason of the fraud
she was delayed and prevented from proceeding with an action
against the defendant for maintenance.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco. George E. Crothers,
Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

A. J. Woolsey and Ford & Johnson for Appellants.

Henry B. Lister for Respondent.

STURTEVANT, J.—This is an appeal by defendants from a decree annulling the judgment which awarded the defendant Frank D. Williams a divorce from this plaintiff.

Several years prior to the seventeenth day of February, 1913, Annabel Williams and Frank D. Williams were married and had been living in Oakland. On the date last mentioned they were occupying a house, 1561 Eighth Street. At that time the defendant Katherine Specula was residing with them as a member of their household. A short time previous to that date Mrs. Williams became afflicted with some sickness and she seems to have been in a very debilitated state of health. While in that condition of health her husband filed a complaint charging her with being an insane person. A hearing was had and on the seventeenth day of February, 1913, she was adjudged an insane person and was committed to the state hospital at Agnews and her husband was appointed guardian of her person and estate. She remained an inmate of the state hospital until December, 1915, when two of her sisters came to California and while they were here the plaintiff was taken out of the asylum temporarily. A little later the husband consented that the plaintiff might accompany her sisters to Dodge City, Kansas, provided that he should remain her guardian; and at the same time he promised to make a monthly remittance to his wife at Dodge City, Kansas. As a part of this plan and for the purpose of carrying it out, the defendant Williams obtained for his wife a pass to Dodge City, Kansas. The arrangement seems to have been amicably made, and good feeling seems to have prevailed all around. When the wife was about to leave the husband brought her a box of candy and a pass to Dodge City, Kansas, and speaking to the plaintiff's sisters said: "Girls, you take my wife east, and, just as quick as she is able to come back, wire me and I will give you her fare. What is the use of taking her things? Because it will not be very long, I am sure, until she is back in her home." Thereupon the

wife left for Dodge City. The remittance was made monthly for three months and then it was stopped. On September 13, 1917, the defendant Williams filed in the superior court of San Francisco a verified complaint charging his wife with desertion. At the same time he filed an affidavit and took out an order for the publication of the summons. The action was brought on for a hearing on the twenty-sixth day of December, 1917. The husband appeared as a witness in his own behalf, testifying that he was a resident of San Francisco. He produced as a corroborating witness Katherine Specula, who testified that her residence was 1561 Eighth Street, Oakland. On that day an interlocutory decree of divorce was entered and thereafter, on December 28, 1918, at Los Angeles, the defendants Frank D. Williams and Katherine Specula were married and thereafter made their home in the house at 1561 Eighth Street, Oakland.

After this plaintiff went to Dodge City, Kansas, her husband did not write to her personally, but did write to some of the members of her family residing in Kansas. The plaintiff did not write to her husband, but a few letters were written to him by members of the plaintiff's family. The exact dates of each of these letters is not clear, but the testimony seems to indicate that a sister-in-law wrote a letter for the plaintiff and sent it to the plaintiff's husband in August, 1918. Whatever may be the date of the letter, the contents consisted of a request for permission that the plaintiff might return to the state of California. The letter was answered by the husband's attorney. The answer declined the permission and stated that "Mr. Williams had other obligations." No other correspondence was exchanged and the plaintiff, without permission, returned to the state of California on the nineteenth day of February, 1920. After she arrived here she learned of the changes that had been made in her affairs and on March 10, 1920, she commenced this action.

[1] The defendants advert to the rule of law that a bill in equity must allege and show that it would be against conscience to allow the enforcement of the judgment in the divorce case, or that it would work injury or injustice to the plaintiff in some specific manner. They then urge the point that in her complaint the plaintiff does not allege that Annabel Williams and Frank D. Williams were ever

married, or that they are husband and wife. It is true that there is no direct and concise allegation on that subject, but many probative facts are set forth in such a manner that we think the plaintiff's pleading is an example of facts defectively pleaded, but not an instance of a failure to state sufficient facts. If the two persons were never married it was a very simple matter to have made the attack when the evidence was being introduced, but no such attack was made. Attached to the bill of exceptions the appellant has a list of assignments of error, which include twenty-two attacks on the insufficiency of the evidence to justify the findings. But in all those attacks there is not a word on the subject of marriage or no marriage.

[2] The defendant, Frank D. Williams, filed a cross-complaint setting up facts showing that the plaintiff had formerly been the wife of one John Kelly, and that she was not legally divorced from him. That paper might have been properly filed by John Kelly, but it was not a necessary or proper pleading on behalf of the defendant Williams.

In plaintiff's complaint she gave undue importance to certain matters regarding a charge of insanity which was filed against her by Frank D. Williams. The appellants did not move to have such matter stricken out, and now devote considerable portions of their briefs to those matters. They are quite immaterial so far as this action is concerned, except as may hereinafter appear.

[3] The appellants also make the point that there are two causes of action improperly joined in the complaint. They assert that the complaint charges a cause of action against Frank D. Williams to vacate a judgment alleged to have been obtained by fraud, and also to recover damages from him, whereas the cause of action against the defendant Specula is to recover damages only. The attack is entirely without merit. (*San Diego Water Co.* v. *San Diego Flume Co.*, 108 Cal. 549, 556 [29 L. R. A. 839, 41 Pac. 495].)

[4] The interlocutory decree of divorce of which complaint is made was filed December 26, 1917; the final decree was filed December 27, 1918. The plaintiff alleged that she did not know of the entry of the judgment until she returned to the state of California on the nineteenth day of February, 1920. This action was commenced March 10,

1920. The appellants claim that the plaintiff should have proceeded by motion instead of by action. Under the foregoing facts the respondent did not err in making her attack by filing a suit in equity instead of by motion.

[5] It is further claimed that the plaintiff was guilty of laches. The facts above recited do not sustain the claim. Neither is the claim supported by the fact that in or about the month of August, 1918, when the plaintiff had written for permission to return to the state of California, Williams replied by a letter written by his attorney that Williams "had other obligations."

[6] The affidavit for publication of summons in the divorce case is as follows: "That defendant left the state of California on the twenty-fifth day of November, 1915, for some place without the state of California *unknown to affiant;* that the last time affiant heard from defendant was by letter from one of her relatives dated March 29, 1916; that the present whereabouts of defendant is now unknown to affiant, but affiant has been informed and verily believes that defendant is now residing somewhere in the state of Kansas. That a summons was duly issued out of this court to the sheriff of the city and county of San Francisco, with directions to said sheriff to serve the same upon defendant, and that said sheriff has returned the same to the clerk of this court with his return thereon endorsed to the effect that the said defendant could not be found in the said city and county of San Francisco." It will be noted it does not purport to rest on that part of section 412 of the Code of Civil Procedure referring to persons (1) who reside out of the state, or (2) cannot after due diligence be found within the state, or (3) conceals himself to avoid the service of summons; but it does purport to rest on that part of the statute that refers to a person who "has departed from the state." Let us now examine the affidavit to see how it squares with the call of the statute. The language is as follows: "That defendant *left* the state of California on the twenty-fifth day of November, 1915, for some place without the state of California unknown to affiant; that the last time that affiant heard from defendant was by letter from one of her relatives dated March 29, 1916; that the present whereabouts of defendant is now unknown to affiant, but affiant has been informed and verily believes that defendant is

now residing somewhere in the state of Kansas.'' It will be noted that the statute uses the word "departed"; but the affidavit uses the word "left." The two words are not synonymous. (*Pezzoni* v. *Pezzoni*, 38 Cal. App. 209 [175 Pac. 801].) If for the purpose of strengthening the meaning of the word "left" and to give it something of the significance of the word "departed" we give some force and effect to the additional language contained in the affidavit, then the words "for some place without the state of California unknown to affiant" become material. But those words were false. Under the uncontradicted testimony the defendant knew where the plaintiff was going when she left the state of California because at that time he obtained for her a pass to Dodge City, Kansas. That portion of the affidavit "that the present whereabouts of defendant is now unknown to affiant, but affiant has been informed and verily believes that defendant is now residing somewhere in the state of Kansas," is not helpful. The "present whereabouts," etc., is not responsive to any call of the statutory provisions "has departed from the state." The statement on information and belief, "that defendant is now residing somewhere in the state of Kansas" is not, properly speaking, an affidavit. The false representation above referred to invalidated the affidavit and the affidavit was to that extent a fraud on the trial court. (*Parsons* v. *Weis*, 144 Cal. 410 [77 Pac. 1007].) [7] As the defendant Williams was the guardian and husband of the plaintiff, the highest duty was owing from him to her. As the defendant Williams was, as guardian, an officer of the court, a special duty was owing by him to the court. When he did not call to the attention of the trial court either in his complaint, or in the affidavit accompanying it, the fact that he was suing his ward, and that his ward was an incompetent person on whom a summons might not legally be served, he was guilty of concealment, another fraudulent act. (*Silva* v. *Santos*, 138 Cal. 536 [71 Pac. 703]; Pomeroy's Equity Jurisprudence, 900, 902.) It is clear, therefore, that the evidence sustains the findings.

[8] In her complaint the plaintiff pleaded, "That by reason of the wrongful acts of defendants herein in obtaining said fraudulent judgment of divorce this plaintiff has been delayed and prevented from proceeding with an action

against F. B. Williams defendant herein for her mainte-
nance and support and has been compelled to hire an
attorney to vacate said judgment of divorce. That the rea-
sonable value of the services of her attorney for such ser-
vices is the sum of five hundred dollars." As supporting
the above allegations, on the trial she introduced evidence
of the reasonable value of her attorney's fee and no other
evidence. The trial court found the above allegation to be
true and awarded damages as prayed. It thus appears that
the theory of the pleader was that she was entitled to re-
cover the attorney fee as an element of damage. Such was
not the rule at common law. (1 Sedgwick on Damages,
sec. 229.) No statute in California has changed that rule.
(Code Civ. Proc., sec. 1021; *Grannis* v. *Superior Court*,
143 Cal. 630, 633 [77 Pac. 647].) The judgment rendered
by the trial court is modified by striking out that portion
that awarded judgment against the defendants for dam-
ages in the sum of five hundred dollars. The respondent is
awarded her costs on appeal.

As so modified the judgment is affirmed.

Nourse, J., and Langdon, P. J., concurred.