108 549
118 537
108 549
149 127

[No. 19446.   Department One.—August 26, 1895.]

# THE SAN DIEGO WATER COMPANY, Appellant, *v.* THE SAN DIEGO FLUME COMPANY, Respondent.

Pleading—Demurrer—Joinder of Causes—Legal and Equitable Relief.—Where both legal and equitable relief are sought in the same pleading, but the right to such relief is based upon the same facts, a demurrer upon the ground that several causes of action are improperly joined and that they are not separately stated cannot be sustained.

Id. — Specific Performance of Contract — Accounting — Damages — Special Demurrer.—Where a complaint sets forth a contract between the plaintiff and the defendant, of which it seeks a specific performance, together with an accounting, and damages for breach of the contract, and for general relief, it is not demurrable for misjoinder of causes of action, nor for uncertainty in not separately stating and numbering several causes of action.

Id.—Parties—Trustees Appointed under Contract.—Where trustees are appointed under a contract to control and operate certain properties for the use and benefit of the respective parties to the contract, such trustees are simply the agents or instruments of the parties to the contract, and have no interest in the controversy in any legal sense, and are not required to be joined as parties defendant in an action for a specific performance of the contract, and for an accounting under it, and for damages for its breach.

Id.—Validity of Contract—Appointment of Trustees by Corporations.—Where a flume company made a contract with a water company which it constituted its sole agent for the exclusive sale of its water within the corporate limits of a city, and the two corporations appointed two trustees consisting of the presidents of both corporations,

to whom were given the control of the properties of the corpora-tions within the city, to operate and control the same for the use and benefit of the respective parties thereto, without giving to the trustees any power or authority over the sale of the water, such contract is not *ultra vires*, nor against public policy, upon the ground that it takes the management of the affairs of the two corporations from their respective boards of directors, and transfers them to the trustees.

ID.—CONTRACT FOR SALE OF WATER IN CITY LIMITS—EXCLUSIVE AGENCY OF ONE CORPORATION FOR ANOTHER—PUBLIC POLICY—MONOPOLY.—A contract making a water company the exclusive agent of a flume com-pany for the sale and distribution of water within the corporate limits of a city to consumers of water, all sales of water being subject to the approval of the flume company, is not illegal, nor beyond the powers of either of the corporations; nor is such contract against public policy, as being a combination between the corporations for the purpose of creating a monopoly for the sale of water to the city and its inhabi-tants, nor as injuriously affecting the interests of the city or its inhabi-tants.

ID. — PREVENTION OF COMPETITION BETWEEN CORPORATIONS — COMMON SUPPLY OF WATER TO CITY.—A contract between corporations for a common supply of a city and its inhabitants with water through one distributing system at reasonable rates, whereby the interest of the city is furthered in that its streets are not subjected to the burden of laying and keeping in repair an additional system of mains and pipes, is not an unreasonable restriction of competition between the parties; nor does public policy condemn or prohibit an arrangement intended to prevent a competition between corporations which would result in the financial ruin of one or both of them, and which could not in any event benefit the city or its inhabitants.

ID.—RATES FOR SALE OF WATER.—Where water can be supplied more cheaply through one distributing plant by two corporations, the gov-erning body of the city in whom is vested the power to fix water rates is bound to take that fact into consideration, as well as all other facts which enable it to fix reasonable rates and award a just compensation, and an agreement between such corporations for a common supply through one distributing plant cannot increase the rate of compensa-tion to be paid by the city or its inhabitants for the water supplied.

ID.—PARTNERSHIP BETWEEN CORPORATIONS—LIMITED AGENCY—COMPEN-SATION.—The agreement between the flume company and the water company making the latter an exclusive agent for the sale and distribu-tion of water in the city limits, and providing for a distribution of profits, does not create a partnership between the two corporations; but only a limited agency with a mode provided of determining the compensation to be received by the flume company for the water fur-nished by it to the water company.

APPEAL from a judgment of the Superior Court of San Diego County.   E. S. TORRANCE, Judge.

The facts are stated in the opinion.

*Works & Works*, for Appellant.

The contract in question is not illegal nor against public policy. (*Ellerman* v. *Chicago Junc. Ry. etc. Co.*, 49 N. J. Eq. 217; *Union Water Co.* v. *Murphy's Flat Fluming Co.*, 22 Cal. 621; *Sutro Tunnel Co.* v. *Segregated etc. Min. Co.*, 19 Nev. 121; *Leslie* v. *Lorillard*, 110 N. Y. 519; 1 Wood's Railway Law, 491–99; *Bissell* v. *Michigan etc. R. R. Co.*, 22 N. Y. 258, 269; *Kent* v. *Quicksilver Min. Co.*, 78 N. Y. 159, 185; *Chicago etc. R. R. Co.* v. *Pullman etc. Car Co.*, 139 U. S. 79; *Elkins* v. *Camden etc. R. R. Co.*, 36 N. J. Eq. 241; *Central Shade Roller Co.* v. *Cushman*, 143 Mass. 353; *State etc. R. R. Co.* v. *Hancock*, 35 N. J. L. 537, 546; *Miners' Ditch Co.* v. *Zellerbach*, 37 Cal. 543; 99 Am. Dec. 300; *Sussex R. R. Co.* v. *Morris etc. R. R. Co.*, 19 N. J. Eq. 13.) Where a corporation has derived any benefit from the execution or partial execution of the contract, it can be compelled to perform on its part to the extent and up to the time such contract has been acted upon. (*Holmes* v. *Willard*, 125 N. Y. 75; *Manchester etc. R R.* v. *Concord R. R. Co.* (N. H., March 14, 1890), 20 Atl. Rep. 383; *State Board of Agriculture* v. *Citizens' Street Ry. Co.*, 47 Ind. 407, 411; 17 Am. Rep. 702; *Bradley* v. *Ballard*, 55 Ill. 413, 417; 8 Am. Rep. 656; *Oil Creek etc. R. R. Co.* v. *Pennsylvania Trans. Co.*, 83 Pa. St. 160; *Main* v. *Casserly*, 67 Cal. 127; *Kelsey* v. *National Bank*, 69 Pa. St. 426, 429; 1 Wood's Railway Law, 491–502; *Bissell* v. *Michigan etc. R. R. Co.*, *supra;* *Witter* v. *Grand Rapids Flouring Mill Co.*, 78 Wis. 543; *Heims Brewing Co.* v. *Flannery*, 137 Ill. 309.) The defense of *ultra vires* cannot avail where it is repugnant to the natural sense of justice. (*Heims Brewing Co.* v. *Flannery, supra; Manchester etc. R. R.* v. *Concord R. R. Co., supra; Oil Creek etc. R. R. Co.* v. *Pennsylvania Trans. Co., supra.*

*McDonald & McDonald*, for Respondent.

The contracts were void and against public policy. (Spelling on Trusts and Monopolies, secs. 82, 106–09: *Arnot* v. *Pittston etc. Coal Co.*, 68 N. Y. 559; 23 Am. Rep.

190; *Ford* v. *Gregson*, 7 Mont. 89; *Santa Clara etc. Lumber Co.* v. *Hayes*, 76 Cal. 387; 9 Am. St. Rep. 211; *San Diego Water Co.* v. *San Diego Flume Co.*, 100 Cal. 43; 9 Am. & Eng. Ency. of Law, 880. See, also, Greenhood on Public Policy, 2; *Kreamer* v. *Earl*, 91 Cal. 117.) A corporation cannot exercise any other powers except such as are specifically granted, or such as are necessary for carrying into effect the powers granted. (*Vandall* v. *South San Francisco Dock Co.*, 40 Cal. 83; Morawetz on Corporations, sec. 316; *Thomas* v. *Railroad Co.*, 101 U. S. 71; *Oregon Ry. & Nav. Co.* v. *Oregonian Ry. Co.*, 130 U. S. 1; *Central Transp. Co.* v. *Pullman Palace Car Co.*, 139 U. S. 24; Civ. Code, sec. 355.) The management and direction of the affairs of the corporation is vested in the board of directors alone. (Morawetz on Corporations, sec. 510; *Gashwiler* v. *Willis*, 33 Cal. 11; 91 Am. Dec. 607; *Bank* v. *Bailhache*, 65 Cal. 327; Morawetz on Corporations, sec. 514.) The authority to delegate these general powers of management cannot be implied. (Morawetz on Corporations, sec. 536.) The contract being an attempt on the part of the corporation to divest itself of its franchise, and thus disable itself from performing its duties to the public, is *ultra vires*, and void. (*Wood* v. *Truckee Turnpike Co.*, 24 Cal. 474; *Oregon Ry. & Nav. Co.* v. *Oregonian Ry. Co.*, *supra; Central Transp. Co.* v. *Pullman Palace Car Co.*, *supra; Pennsylvania R. R. Co.* v. *St. Louis etc. R. R. Co.*, 118 U. S. 290; *Thomas* v. *Railroad Co.*, *supra; Stockton* v. *Central R. R. Co.*, 50 N. J. Eq. 52; *Randolph* v. *Larned*, 27 N. J. Eq. 557; *Troy etc. R. R. Co.* v. *Boston etc. Ry. Co.*, 86 N. Y. 107; *Fanning* v. *Osborne*, 102 N. Y. 441; *Peoria etc. Ry. Co.* v. *Coal Valley M. Co.*, 68 Ill. 489; *Richardson* v. *Sibley*, 11 Allen, 65; 87 Am. Dec. 700; *Middlesex R. R. Co.* v. *Boston etc. R. R. Co.*, 115 Mass. 347; *Stewart's Appeal*, 56 Pa. St. 413; *Gibbs* v. *Drew*, 16 Fla. 147; 26 Am. Rep. 700; Ray on Contractual Limitations, 273, 278.) Corporations cannot enter into a partnership without legislative authority. (1 Morawetz on Corporations, sec. 421; 2 Beach on Corporations, sec. 843; Ray on Contractual

Limitations, sec. 56; *People* v. *North River etc. Co.*, 121 N. Y. 582; 18 Am. St. Rep. 843; *Mallory* v. *Hanauer Oil Works*, 86 Tenn. 598; *People* v. *North River etc. Co.*, 54 Hun, 355; *Pearce* v. *Madison etc. R. R. Co.*, 21 How. 441; *Burke* v. *Concord R. R. Corp.*, 62 N. H. 531.)   The contract is void as creating a monopoly and restraining competition. (*Pacific Factor Co.* v. *Adler*, 90 Cal. 110; 25 Am. St. Rep. 102; *Santa Clara etc. Co.* v. *Hayes, supra;* Ray on Contractual Limitations, 212, 213, 234, 238, and the numerous cases cited by Judge Ray; *Richardson* v. *Buhl*, 77 Mich. 632; *Chicago Gas Light Co.* v. *People's Gas Light Co.*, 121 Ill. 530; 2 Am. St. Rep. 124; *People* v. *Chicago Gas Trust Co.*, 130 Ill. 268; 17 Am. St. Rep. 319; *Gibbs* v. *Consolidated Gas Co.*, 130 U. S. 396; *West Virginia Transp. Co.* v. *Ohio River Pipe Line Co.*, 22 W. Va. 600; 46 Am. Rep. 527; *Thomas* v. *West Jersey R. R. Co.*, 101 U. S. 71; *Central Transp. Co.* v. *Pullman Palace Car Co., supra.*)

HAYNES, C.—Defendant's demurrer to the complaint was sustained, and, the plaintiff declining to amend, judgment of dismissal was entered, from which judgment it appeals.   The only questions to be considered, therefore, are those presented by the demurrer.   The complaint alleges, in substance, that both the parties to this action are corporations organized and existing under the laws of this state for the purpose of distributing, selling, and furnishing water to consumers in the county and city of San Diego; that the plaintiff is the owner of a complete distributing plant for furnishing water to the city of San Diego and its inhabitants; that the defendant is the owner of water rights, reservoirs, and a supply of water outside of said city, from which the water is conducted by flumes and pipes to the city boundary, where, during all the times mentioned in the complaint, they were and are connected with the water mains and pipes of the plaintiff; that the defendant was not, and is not, the owner of any water pipes within the city, and

was unable to distribute or furnish its water to the city or its inhabitants.

Under these circumstances the parties to this action executed two written agreements, both bearing date November 6, 1890, which are referred to as exhibits A and B respectively, but which constitute one contract. By the first, the flume company appoints the water company its sole agent for the exclusive sale of its water within the corporate limits of the city as then or thereafter established, excepting the peninsula of San Diego; but all sales made by the water company " shall be subject to the approval of the party of the first part (the flume company), and no sales shall be made without the consent of the party of the first part." It was further provided that said appointment should continue and be in force during the continuance of the other contract of the same date, namely, twenty years.

The other contract—exhibit B—is very long, but for the purpose of disposing of the questions made upon this appeal may be greatly condensed. By this agreement, E. S. Babcock and J. W. Sefton, the former the president of the plaintiff corporation and the latter the president of the defendant, were appointed trustees, to whom were given the control of the properties of these corporations, respectively, " so far as the same may be confined to the corporate limits of the city of San Diego," to operate and control the same for the use and benefit of the respective parties thereto. These trustees were selected and named, one by each corporation, and each was to hold said office of trustee at the pleasure of the party naming him, who should also appoint his successor, and the compensation of each should be fixed and paid by the party appointing him; that " the use, operation, and control of these properties by the said trustees shall be for the purpose of furnishing the water supply to the city of San Diego and its inhabitants—the profits arising therefrom to be subject to the control and use of the parties hereto, as hereinafter mentioned; said parties hereto agreeing to combine

their joint endeavor for the advancement of their respective interests under this trust, subject to the conditions as hereinafter mentioned."

The water company agreed to furnish its entire plant, and the flume company agreed to deliver at the city limits a sufficient quantity of good water for the supply of the city and its inhabitants, to be used by the trustees for that exclusive purpose.

The trustees were to keep three separate accounts, one designated as the "operating account," another as "first division account," and the third as "second division account." The second and third accounts were for the purpose of distributing the profits between the respective corporations. The agreement stated in a general way what should be charged to operating expenses, and, except as provided, and excluding certain specified matters, the trustees were empowered to determine what should constitute a proper charge to that account.

It was also provided that the flume company might use the water company's system of pipes for conducting water to parties outside the city limits, the compensation therefor to be fixed by the trustees.

The complaint further alleged that the parties thereto entered upon the performance of said agreement; that the plaintiff, in all things, carried out and performed the same on its part; that plaintiff and defendant and their said trustees failed to agree as to the proper basis of division of the accounts between them, and especially as to the amount to be expended for the extension of plaintiff's plant, and have been unable to agree upon a settlement of their said accounts; alleged plaintiff's willingness to settle and adjust the same, but that defendant made said differences an excuse for not furnishing the water required by the contract, and had wholly failed, since May 2, 1892, to comply with said contract, though plaintiff had demanded in writing such performance; alleged that upon a true and just accounting there was due to it from defendant the sum of about fifty thousand dollars, but that if the court should find

otherwise, and that it was indebted to the defendant, it thereby offered to pay the same; that by the defendant's failure to comply with its said contract plaintiff had been damaged in the sum of one hundred thousand dollars; that acting under said contract plaintiff contracted with the city of San Diego to supply it with water for the term of twenty years at a reasonable profit, but that defendant, after furnishing water for said purpose for about a year, failed and refused to longer furnish the same, whereby plaintiff sustained special damage in the sum of one hundred thousand dollars.

The prayer is for an accounting, for damages, and for a specific performance of the contract, and for general relief.

The demurrer was upon several grounds, viz: 1. For want of facts sufficient to constitute a cause of action; 2. That two alleged causes of action for damages are joined with an alleged cause of action for specific performance, without separately stating said several causes of action; 3. For defect of parties, in that Babcock and Sefton, the trustees, are not made parties; and 4. That the complaint is uncertain in that several causes of action are joined without being separately stated and numbered.

The second and fourth grounds of demurrer go to the joinder of several causes of action without being separately stated. Different causes of action are not stated, however. Both legal and equitable relief is sought, but the right to such relief is based upon the same facts. (Pomeroy's Code Remedies, sec. 452.)

Nor is the third ground of demurrer well taken. The trustees were simply the agents or instruments of the parties to the contract, and had no interest in the controversy in any legal sense.

Whether the complaint states facts sufficient to constitute a cause of action is the principal question in the case.

Respondent contends "that enough appears upon the face of the complaint to show that said contracts were

void, because beyond the powers of the respective cor-
porations and against the public policy of the state."

The questions here presented were discussed by coun-
sel in another action between the same parties, but that
case went off upon another point, and no opinion was
expressed upon them. (*San Diego Water Co.* v. *San
Diego Flume Co.*, 100 Cal. 43.)

It is contended that the contract in question was *ultra
vires*, because under it the management of the affairs of
the two corporations were taken from their respective
boards of directors and transferred to two trustees, each
of whom is a stranger to the corporation appointing the
other.

This statement of the effect of the contract is too
broad. When analyzed, the powers of the trustees are
very limited. By that part of the contract called "exhibit
A," the plaintiff, as a corporation, was appointed the agent
of the defendant corporation for the sale of water within
the city of San Diego; but all sales were subject to the
approval of the defendant, and no sales could be made
without its consent. The trustees were not given any
power or authority over the *sale* of the water. They
were given the general charge of operating the works
of the plaintiff in distributing the water furnished by
the defendant, and of keeping the accounts of receipts
and expenses, with a limited power of determining what
should be charged to the account of operating expenses,
and, with that exception, their whole powers and duties
were executory, and such as could not be discharged by
any board of directors otherwise than through an agent;
nor is it material whether these agents were or were not
connected with either corporation. They derived their
authority from the agreement, and, as they were named
in the agreement, each corporation acted upon and con-
sented to the appointment of both.

It is not contended that two corporations may not
enter into contracts with each other. Their power to
do so depends, however, upon the character of the con-

tract examined in the light of their charters and of public policy.

So far as the subject matter of the contract is concerned, it relates to the sale and distribution of water, and to that extent, at least, it relates to the very purpose of the organization of each of these corporations, and is therefore presumably within their power.

It is contended, however, in support of the demurrer "that under the power conferred by subdivisions 5 and 8 of section 353 of the Civil Code, the defendant, by its board of directors, was only authorized to appoint such agents and enter into such contracts as were essential to the transaction of its ordinary affairs; and that any attempt to make the plaintiff its exclusive agent for the sale of water was illegal and beyond the powers of the corporation."

The statement that plaintiff is made "the exclusive agent" of the defendant for the sale of water is too broad; such agency is confined to the corporate limits of the city of San Diego, within which the plaintiff alone had the means of distributing water to consumers. The agency, however, while exclusive, was not unlimited or unrestricted; but all sales of water were to be subject to the approval of the defendant, and no sales could be made without its consent. It is not suggested that the plaintiff corporation could not legally become an agent as to matters consistent with or in furtherance of the objects of its organization, nor that the defendant, within similar limitations, could not appoint an agent; but the real question involved lies back of and beyond these objections, which go only to the instrumentalities used to carry out the ultimate purpose of the parties in making the contract in question, viz., that the contract is against public policy, and therefore void.

It is urged that "both corporations were formed for the purpose, among other things, of furnishing water to the city of San Diego and its inhabitants, and are, therefore, *quasi* public corporations"; and that "the agreement is contrary to public policy, for the reason that it

is a combination between the parties for the purpose of creating a monopoly for the sale of water to the city of San Diego and its inhabitants."

That the contract is consistent with the purpose of the organization of each of these corporations, viz., "to furnish the city of San Diego and its inhabitants with water," is too clear for discussion. The question is therefore narrowed down to this: Does the agreement create a monopoly, or in any manner injuriously affect the interests of the city or its inhabitants?

Monopoly signifies the sole power of dealing in a particular thing or doing a particular thing, either generally or in a particular place. A monopoly is usually, though not necessarily, harmful or injurious to public interests, though as that term is generally used injury to the public is implied, and competition is therefore regarded as favorable to the public interest. But there is a competition which tends to monopoly by driving out all but the stronger competitor, when prices are again increased so as not only to yield a profit upon the original investment, but to recoup the losses incurred in breaking down competitors; or, where the competitors are of equal strength and tenacity of purpose, it may result in the destruction of the public service by the collapse of all of them.

At and before the date of the contract in question the plaintiff was the owner of a pumping plant, and of a system of mains and pipes, for the distribution of water to the city of San Diego and its inhabitants, and was engaged in supplying them with water. The defendant was the owner of a reservoir supplied with water, together with flumes and pipes by which the water was conveyed to the borders of the city; but it owned no distributing plant by which it could dispose of its water within the city. To enable it to do so it must either purchase plaintiff's distributing plant, or construct a distributing system of mains and pipes of its own, or sell its water within the city by or through the plaintiff under some agreement for that purpose. It is not sug-

gested that one distributing plant is not sufficient for all the wants of the .city and its inhabitants, and certainly we cannot assume that it is not. Some agreement of the character here in question which would effectuate the evident intention of the parties would appear to be to the best interest of both corporations; and if the city and its inhabitants can be properly served through one ·distributing system, at reasonable rates, it is obviously to its best interest that its streets should not be subjected to the burden of laying and keeping in repair an additional system of mains and pipes. So far as the parties to this contract are concerned the restraint is only partial. It is confined to the city of San Diego, or rather to that part of it which did not include the peninsula; and this we think was upon a sufficient consideration, and not an unreasonable restriction as between the parties. (See *Mitchell* v. *Reynolds*, 1 Smith's Lead. Cas., 8th ed., 417.)

Nor does it injuriously affect the city or its inhabitants. Our constitution provides that: "The use of all water now appropriated, or that may hereafter be appropriated, for sale, rental, or distribution, is hereby declared to be a public use, and subject to the regulation and control of the state, in the manner to be prescribed by law," and it further provides that the rate of com_pensation to be collected for the use of water supplied to any city or town or its inhabitants shall be fixed annually by the governing body of the city and county, or city or town; and any person or corporation collecting water rates "otherwise than as so established" shall forfeit the franchises and waterworks of such person or corporation to the city, etc. (Const., art. XIV, sec. 1.)

In *Spring Valley Water Works* v. *San Francisco*, 82 Cal. 286, 16 Am. St. Rep. 116, it was held that when the constitution provides for the fixing of rates, or compensation for the use of water, it means reasonable rates and just compensation; that the power of regulating rates is not a power of confiscation, or to take the property of the water company without just compensation.

Under the constitution, and the construction thus given its provisions, we fail to perceive how the agreement in question can create a monopoly, or in any manner increase the rate or compensation to be paid by the city or its inhabitants for the water supplied. Indeed, it is evident that water can be supplied more cheaply through one distributing plant than through two; and the governing body of the city, in whom is vested the power to fix the water rates, is bound to take that fact into consideration as well as all other facts which will enable it to fix "reasonable rates," and award a "just compensation."

In Morawetz on Private Corporations, at section 1129, it is said that the same rule which applies to traffic arrangements between competing railroads applies also to telegraph, water, and gas companies; and in relation to traffic arrangements between competing roads it is said, at section 1131: "It is certainly not true that *all* agreements or combinations restricting competition are illegal at common law. . . . . Even if there were such a rule as has been claimed applicable to competition in trade, the principle and policy of the rule would not be applicable to traffic arrangements designed merely to prevent ruinous competition and 'wars' among railroad companies. The main objection which has been urged against combinations restraining competition in trade, namely, that such combinations tend to produce monopolies and cause extortion, has no application to combinations among railroad companies, for railroad companies are prohibited by law, irrespective of any combination, to charge more than reasonable rates. . . . . Public policy clearly does not demand that railroad companies operating competing lines shall engage in strife causing their financial ruin."

With even greater force may it be said in this case that public policy does not condemn nor prohibit an arrangement intended to prevent a competition between these corporations which would inevitably result in the

CVIII. CAL.—36

financial ruin of one or both of them, and which could not in any event benefit the city or its inhabitants.

The contention that the agreement in question creates a partnership between these corporations is without force. It does not appear that it covers all of the business of either party, though the whole of the business of each relates to the sale of water. In a partnership each partner has authority to represent all the partners, and to bind them by his acts so far as they relate to the partnership business. Here the agency is not of that character, but is expressly limited. It simply provides a mode of determining the compensation the defendant shall receive for the water furnished by it to the plaintiff—an arrangement made necessary by the fact that neither of the parties, nor both combined, could determine the rate at which the water could be sold to consumers, nor accurately fix the cost of distribution, nor the quantity of water required.

The judgment should be reversed, with directions to overrule the demurrer to the complaint.

Vanclief, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is reversed, with directions to overrule the demurrer to the complaint.

Garoutte, J., Harrison, J., Van Fleet, J.