NORTHERN NATURAL GAS COMPANY, a corporation, Plaintiff, v. HUGOTON PLAINS GAS AND OIL COMPANY, a corporation, Defendant.

*(January* 9, 1963.)

CHRISTIE, J., sitting.

*Howard L. Williams* and *Henry N. Herndon, Jr.* (of Morris, James, Hitchens and Williams) and Of Counsel: *Lawrence I. Shaw* (of Omaha) for the plaintiff.

*James M. Tunnell, Jr.,* and *Andrew B. Kirkpatrick, Jr.,* and *Richard H. Allen* (of Morris, Nichols, Arsht and Tunnell) and Of Counsel: *Horace D. Ballaine* (of Conner, Winters, Randolph and Ballaine, of Tulsa) for the defendant.

Superior Court for New Castle County, No. 212, C. A., 1959.

CHRISTIE, J.:

Northern Natural Gas Company (Northern) seeks by this action to recover overpayments it says it made for gas purchased from defendant Hugoton Plains Gas and Oil Company (Hugoton Plains). The causes of action asserted by

plaintiff are based upon a refund contract alleged to have been entered into by Harris Trust & Savings Bank of Chicago, Illinois (Harris) as agent for Hugoton, and alternatively upon the principles of restitution. Defendant has moved for summary judgment upon the ground that Harris was not the agent of Hugoton Plains relative to the refund contract and that Harris is the only proper party, or an indispensable party, to the restitution cause of action.

On September 15, 1949, Northern entered into a contract with the predecessor of Hugoton Plains for the sale of natural gas to Northern at a contract price of 10.5¢ per M.c.f. at a pressure base of 16.4 pounds per square inch absolute, without correction for deviation from Boyle's law. The gas sold was produced from the Hugoton field in Kansas and Oklahoma.

In December of 1950, Hugoton Plains negotiated a loan of $20,000,000, one-half of this amount from each of two insurance companies, giving in exchange its promissory notes therefor. To secure the indebtedness represented by the notes and to provide for the payment thereof, Hugoton Plains entered into an agreement with the insurance companies. Under the agreement, Hugoton Plains mortgaged its gas-producing properties to Harris and pledged to Harris its rights under its contract with Northern all as security for the debt. To provide for the mechanics of repayment of the debt in monthly increments of not less than $131,300.00 Hugoton Plains assigned to Harris the future proceeds under its contract with Northern. The assignment was to remain in effect until the indebtedness was paid. Under this assignment all or virtually all the funds received for the sale of gas were to be applied by Harris for Hugoton Plains' benefit, a portion being applied to the payment of principal and interest upon Hugoton Plains' notes and the remaining portion being remitted directly to Hugoton Plains. Pursuant to this assignment, Northern made payments for gas purchased to Harris, as assignee.

Included in such payments were the alleged overpayments which form the basis of this suit.

For purposes of defendant's motion, it may be assumed that Northern made overpayments for gas purchased during the period here involved, under the compulsion and duress of Kansas and Oklahoma minimum price orders which were later declared invalid and void. It may also be assumed that such overpayments were by checks bearing the legend that they were accepted subject to the refund condition specified in various letters.

Plaintiff has alleged that Harris accepted the checks, as agent for Hugoton Plains, as a result of which there was a refund contract obligating Hugoton Plains, as principal, to refund the sums here demanded. In support of this contention, plaintiff has filed a number of affidavits designed to indicate that Hugoton Plains exercised a high degree of control over its contract with Northern and that Hugoton Plains held itself out to Northern as being the principal for Harris' agency.

Defendant has denied that there was any principal and agency relationship between Hugoton Plains and Harris, relying upon the terms of an instrument designated "Deed of Trust and Assignment of Minerals and Proceeds of Sale Thereof" which was entered into by Hugoton Plains and Harris on December 27, 1950 in compliance with the terms of Hugoton Plains' loan arrangement with the insurance companies. Defendant also maintains that Harris would be the only proper party defendant in a suit for restitution and that in any event Harris is an indispensable party to any such suit.

The basic facts upon which plaintiff's claim rests are almost identical to those presented to this Court in a number of other cases including the case of *Cities Service Gas Company v. Columbian Fuel Corporation*, 2 Storey 262, 155 A. 2d 879 (Superior Court 1959). The only pertinent unique fea-

ture of the case at bar is the agreement between Hugoton Plains and Harris whereby Harris was given certain rights and duties in order to secure the loan from the insurance companies to Hugoton Plains. Defendant's motion for summary judgment is based entirely upon this agreement and the relationship of the parties with Harris in view of the agreement.

In several other gas rebate cases recently considered by this Court plaintiff's claims were based upon allegations statting alternative legal grounds for liability—the one based on contract and the other on restitution. In every case, however, liability was found to exist upon the theory of restitution. Therefore, I turn first to defendant's contention that Harris is not only an indispensable party but is the only party against whom a claim for restitution may be directed.

Since it is apparent that Hugoton Plains received the direct and immediate benefit from any overpayments made by Northern, it cannot be said that Harris is the only party against whom a claim for restitution may be directed. Hugoton Plains is a proper party, but does temporary control of the funds and disbursement thereof by Harris in accordance with a security agreement which is designated a trust make Harris an indispensable party?

Superior Court Civil Rule 12(b) (7) lists the failure to join an indispensable party as a defense which may be raised by motion. There is a similar provision in the corresponding Federal Rule. The Superior Court Civil Rules, however, contain no detailed provisions as to the necessary joinder of parties such as those found in Federal Rule 19. Neither rules contain a definition of the term "indispensable party".

The usual approach to this problem is summarized by Barron and Holtzoff as follows:

"Indispensability of parties is determined on practical considerations and the Supreme Court has said that 'there is

no prescribed formula for determining in every case whether a person is an indispensable party.' *Niles-Bement Pond Co. v. Iron Moulders' Union Local No. 68*, 1920, 41 S. Ct. 39, 254 U. S. 77, 65 L. Ed. 145. The classic definition of indispensable parties by the Supreme Court is: 'Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.' *Shields v. Barrow*, 17 How. [129] 130, 136, 58 U. S. [129] 130, 15 L. Ed. 158 (1854). This definition is frequently repeated. Thus it is said that the test of indispensability is whether the absent person's interest in the controversy is such that no final judgment or decree may be entered which will do justice between the parties actually before the Court, without injuriously affecting the rights of others not brought into the action. Though injury to the absent party is the most important factor in determining indispensability, other factors which have received recognition in opinions include the danger of inconsistent decisions, avoidance of a multiplicity of suits and the reluctance of a Court to render a decision which will not finally settle the controversy before it." (Barron and Holtzoff 2 *Federal Practice and Procedure* § 512.)

A very complete study of the subject is found in Compulsory Joinder of Parties in Civil Actions by John W. Reed, 55 *Mich. L. Rev.* 327, 483 (1957). Professor Reed concludes his study with an observation that "required joinder should be resolved less and less on the basis of pat formulations which provide generalized characterizations of parties, and more and more on case by case consideration of the interrelated and sometimes competing interests in reducing litigation, minimizing harassment of defendants, protecting absent persons, providing a forum for bona fide claims, and the like."

The relationship between defendant and Harris is gov-

erned by the Deed of Trust and Assignment entered into by defendant and Harris December 27, 1950. This document is primarily a stakeholding arrangement under which Harris represents the collective security of the lending insurance companies and acts as the medium through which payments on the loans are made.

The instrument sets up the following relationships:

1) Hugoton mortgages its property to Harris using the form of a conveyance in trust.

2) Hugoton assigns and pledges its rights under its contract with Northern to Harris.

3) Hugoton assigns the gas produced to Harris.

As mortgagee, pledgee and assignee, Harris is not an indispensable party to this lawsuit, but defendant maintains that Harris was a trustee and that trust property was involved in this dispute. If Harris is a trustee within the usual sense of the term, it is an indispensable party. *Lewis v. Hanson*, 36 Del. Ch. 235, 128 A. 2d 819, 835 (1957), citing 54 *Am. Jur.*, Trusts, § 584; affirmed *Hanson v. Denckla*, 357 U. S. 235, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). However, an exception to the rule that a trustee is an indispensable party where trust property is involved was early noted in a California case where the trustee's powers and duties were limited and the rights of all interested parties were represented without the trustee. *San Diego Water Co. v. San Diego Flume Co.*, 108 Cal. 549, 41 P. 495 (1895), see also *Clayton v. James B. Clow & Sons*, 154 F. Supp. 108 (D. C. Ill. 1957).

A security agreement such as that here involved creates relationships which lack many of the usual elements of a trust. It has been suggested that such agreement creates nothing more than a mortgage in so far as the relationship between the borrower and the trustee is concerned and that a trust

exists only as to the relationship between the trustee and the creditors. *Ashhurst v. Montour Iron Company*, 35 Pa. 30 (Sup. Ct. 1860).

■ Furthermore, it must be noted that the rights and duties of the trustee and of the beneficiaries are to have no bearing on the outcome of the restitution phase of this litigation. Indeed, the existence of the so-called trust is quite incidental once it is established that Hugoton received the full benefit from the overpayments. If the trustee were before the Court, it would be merely a formal party without real interest as trustee or otherwise in the outcome of the litigation. Where a trustee is merely a stakeholder, such trustee is not an indispensable party to a suit involving the corpus of the trust. *Salem Trust Company v. Manufacturers' Finance Company*, 264 U. S. 182, 44 S. Ct. 266, 68 L. Ed. 628 (1923). Likewise such a trustee is not an indispensable party in an action by bondholders against the debtor. *Andrews v. Norddeutscher Lloyd*, 12 F. Supp. 129 (E. D. N. Y. 1935); *Rabinowitz v. Kaiser-Frazer Corp.*, 111 N. Y. S. 2d 539 (Sup. Ct. 1952).

■ In this Case, Harris is less than a stakeholder—Harris is a former stakeholder through which the funds have already passed under a pre-determined formula the application of which is not in dispute.

I conclude that although Harris is designated a trustee and although Harris has some of the rights and duties of a conventional trustee, Harris' relationship to the parties and to the subject matter of the dispute is not such as to make the presence of Harris a necessary prerequisite to a just and final determination of the dispute that exists between Northern and Hugoton Plains. Indeed Harris has no interest at all in the outcome of the suit for restitution. Accordingly, defendant's motion for summary judgment is denied.