Breitel, J. (dissenting).
True, a court of another State or nation, competent under its own law to decide a dispute, with all necessary parties before it, and with jurisdiction over the subject matter, may render a judgment to which, as the case may be, the courts of this State will be bound by the Full Faith and Credit Clause to enforce, or may by comity accord recognition. But that is not this case. The California court was not competent. Although the California Superior Court is one of unlimited general jurisdiction in most matters, it is not when it functions as a probate court. In that respect its limitations are the same as those applicable to the Surrogate’s Court in this State. Moreover, an indispensable party, the trustee, was lacking. Nor was the trustee “passive ”, a mere stakeholder, or empowered only to perform a 1 ‘ mere ministerial act ’ ’ on behalf of the settlor, the circumstance in which the presence of the trustee may be dispensed with either under California or New York law. At least this would be so until, and only if, the California court directed the turnover thus terminating the trustee’s function, a bootstrap nunc pro tunc achievement of jurisdiction if ever there would be. No case has so held, and the California cases relied on by respondents prove the contrary. And, of course, subject-matter jurisdiction in the sense of jurisdiction over the res was lacking.
Most important, the California court was not interpreting a will of one of its domiciliaries when it applied its peculiar cy pres statute to the exercise of a power of appointment, but instead was interpreting the exercise of the power of appoint *167 ment created by and limited by the trust instrument over which it had no jurisdiction. Similarly, in applying conflict rules, those applicable to powers and not to wills govern, a rather elementary proposition.
These are the matters upon which the issues turn and it is upon the answers to those issues posed by the majority that the affirmance depends. If those answers are incorrect, and it is suggested that they are, the affirmance is unsupportable. To unravel the intermingled lines of reasoning it is best, if not essential, to retrace the logical steps and delineate the confusions where they arise.
In following the unraveling, however, it will be helpful to keep in mind that the majority opinion by its reasoning is able to conclude that a competent California court with jurisdiction over probate matters interpreted a will and thereby bound all the parties present before it, including appellants in this case. Hence, it applies full faith and credit to the California order. The dissenting view is that the California court was not competent, the California court was not interpreting a will but the exercise of a power (which happened to have been exercised in a will) over which, for a variety of reasons, it had no subject-matter jurisdiction, and that, therefore, no principle of collateral or direct estoppel applies, even if the court had been competent. Hence, it denies comity, let alone full faith and credit, to the California order.
In 1935 Margaret Acheson established a trust in New York designating the Guaranty Trust Company, as it was then known, as trustee. The indenture provided that the corpus was to be held for the life of her son, Edward Goodrich Acheson, Jr., and upon his death, 1/6 of the corpus to be held for the life of her grandson, Edward Goodrich Acheson, III (Acheson). Upon the grandson’s death, this part would pass as Acheson might appoint by will, or upon default to his distributees on intestacy.
Acheson died in 1965, domiciled in California. He was survived by his widow, Helen Acheson, their child, Linda Belle Acheson, respondents in the present proceeding, and by the appellants, five children by prior marriages. He purported to exercise the power in a will admitted to probate in California on December 27, 1965. The will, invalidly, as conceded by all and uniformly so held in the New York and California proceed *168 ings, provided that the corpus should be held in further separate trusts for the benefit of his widow and their daughter, Linda Belle Acheson, a beneficiary not in being at the creation of the 1935 trust, for their respective lives. The extension of the New York trust for the life of Linda Belle Acheson violated the New York rule against perpetuities (EPTL 9^1.1).
In August, 1966 this proceeding was begun by Morgan Guaranty, as it was now known, as trustee of the New York trust for a final accounting, a direction as to the disposition of the corpus, and a construction of the California will to determine whether there had been a lawful exercise of the power of appointment. Before these issues were resolved by the New York court, the Bank of America, executor and trustee under Acheson’s will, petitioned the California Superior Court for an order interpreting the will, but really the exercise of the power, to reconstruct and validate the exercise of the power despite its invalidity. The appellants, the five children of Acheson by his earlier marriages, who would take if the exercise of the power were declared invalid, did not appear in the California proceeding, although they apparently received extraterritorial notice. The California court, on default, granted the requested relief. In doing so, it applied section 715.5 of the California Civil Code, a statute without parallel in this or most States, enacted in 1963, which reads: “ No interest in real or personal property is either void or voidable as in violation of [the rule against perpetuities] if and to the extent that it can be reformed or construed within the limits of that section to give effect to the general intent of the creator of the interest whenever that general intent can be ascertained. This section shall be liberally construed and applied to validate such interest to the fullest extent consistent with such ascertained intent.” On March 15, 1968 appellants applied under section 473 of the California Code of Civil Procedure for an order relieving them from the determination in the heirship proceeding. After a hearing, the California court denied the motion. It refused to reach the merits on the ground that the appellants had known, apparently by extraterritorial notice, of the institution of the proceeding and their failure to contest it precluded them.
Respondents in the New York proceeding, Acheson’s wife and daughter, then sought recognition by the New York court of *169 the California order. Appellants objected that Acheson’s exercise of the power was invalid and that the corpus should be distributed to both groups of beneficiaries, appellants and respondents, as distributees on intestacy under the alternative beneficiary clause in the 1935 trust indenture.
The Supreme Court concluded that New York law governed the validity of the exercise of the power under the trust indenture. It also held, however, that the Full Faith and Credit Clause required recognition of the California order and directed payment of the corpus to the California executor under the Acheson will. The Appellate Division unanimously affirmed without opinion (34 A D 2d 619).
It is a settled concept, obtaining in California and New York alike, that property subject to a general testamentary power of appointment passes to the designated appointees not through the donee’s estate but directly from the donor’s trustee. (In contrast, in the case of a general power presently exercisable, the rule is otherwise [EPTL 3-5.1, subd. (g), par. (1); 5 Scott, Trusts, 3d ed., § 635, p. 4037].) Under the common-law conduit or agency ” theory of powers, the donee in exercising the power is deemed an agent appointing property belonging to the donor. The trust indenture incorporates by reference the dis-positive portion of the donee’s will, or, expressed in terms of the doctrine of relation back, the appointment under the power is read into the instrument granting the power. (Gray v. Union Trust Co., 171 Cal. 637, 639-640; Estate of Masson, 142 Cal App. 2d 510, 512; Estate of Baird, 135 Cal. App. 2d 343, 345; Estate of Baird, 120 Cal. App. 2d 219, 227-229; O’Neil v. Ross, 98 Cal. App. 306, 321; cf. Estate of Newton, 35 Cal. 2d 830, 832, 834-835; Bishop v. Bishop, 257 N. Y. 40, 51; Chase Nat. Bank v. Central Hanover Bank, 265 App. Div. 434, 441; 3 Restatement, Property, Introductory Note to ch. 25, at pp. 1811-1815; 45 N. Y. Jur., Powers, §§ 32, 50; 39 Cal. Jur., 2d, Powers, § 3; 5 Scott, op. cit., supra, § 635; 5 American Law of Property, § 23.3.) Consequently, it misstates and distorts the legal analysis to describe the California court as concerned with the “meaning and interpretation of language used by [its domiciliary] in disposing of his personal property by will ”, reasoning adopted by the majority (p. 162, italics supplied).
*170 Consistent with this view, the devolution of appointive assets of a trust having New York as its State of administration would be determined in an independent New York proceeding, and the intrinsic validity, effect, and interpretation of the instrument purporting to exercise the power would be governed by New York law (EPTL 3-5.1, subd. [g], par. [2]). In the case of a nonresident donee, no determination by the foreign domiciliary court in its probate proceeding would affect the New York proceeding. (Matter of Bauer, 14 N Y 2d 272; Matter of Franciscus, 12 Misc 2d 335, 337; Matter of Walbridge, 178 Misc. 32, 37 [Foley, S.] and cases cited; Matter of Rogers, 168 Misc. 633, 642-643 [Foley, S.]; Matter of Harriman, 124 Misc. 320, affd. 217 App. Div. 733. See, generally, Restatement, Second, Conflict of Laws [Proposed Official Draft, part III, April 22, 1969], § 274; 5 Scott, loe. cit., supra.) In this context it is unprecedented and illogical to apply conflict rules governing wills as does the majority, in stating that the courts will look to the law of the domicile in interpreting a testator’s will in disposing of his personal property. The applicable rules are those dealing with powers, whether or not exercised by will, as the authorities cited indicate, and, indeed, as is precisely the doctrine in California (39 Cal. Jur. 2d, Powers, § 6).
Of course, the New York court’s responsibility would be to apply the New York law to the alleged violation of the rule against perpetuities. The invalidity of the Acheson appointment under the New York rule is conceded and was inescapable. Perhaps sensitive to this inevitable conclusion respondents moved in the California court for a determination of the issue. Although all parties were before the New York court in this proceeding and the matter was otherwise ripe for decision, Special Term, for reasons not quite clear, and over the objections of appellants, reserved decision. Meanwhile the California court under its peculiar statutory cy pres power gave a validating interpretation to the exercise of the power, a result concededly beyond the reach of a New York court (compare West’s California Civil Code, § 715.5 with EPTL 9-1.3; see Commentary to EPTL 9-1.3, McKinney’s Cons. Laws of N. Y., Book 17B, 1970-1971 Supp., at p. 79).*
*171 Had the matter not gone any further the California order could' not have precluded the appellants from litigating the effectiveness of the exercise of the power since they had never appeared in response to extraterritorial notice. However, appellants made a postjudgment motion to vacate the California order. Under the greater weight of California authority, such a motion constituted a general appearance conferring personal jurisdiction over them. (For California decisions holding that a motion to vacate a judgment on the merits under section 473 of the California Code of Civil Procedure constitutes a general appearance in the prior proceedings, see Security Loan & Trust Co. v. Boston & South Riverside Fruit Co., 126 Cal. 418, 421-423; Bank of America v. Carr, 138 Cal. Ápp. 2d 727, 734-736; Shelley v. Casa De Oro, Ltd., 133 Cal. App. 720, 723; Farmers &. Merchants Nat. Bank v. Superior Ct., 25 Cal. 2d 842, 846-847; but cf. Bunnell v. Wynns, 13 Cal. App. 2d 114, 117; Batte v. Bandy, 165 Cal. App. 2d 527, 539. See, generally, Lurvey, General Appearance after Default, 19 Hastings L. J. 541; Restatement, Judgments, § 19, Comment a; 5 Am. Jur., 2d, Appearance, §§ 14, 16, 30-34; Ann., Motion to Vacate Judgment or Order as Constituting General Appearance 31, ALB 2d 262.)
Thus,' the issue is whether the California order limits the powers of the New York court to make an original determination based on New York’s rules. Because the California order was jurisdictionally infirm, it was not entitled to recognition in New York. The California court lacked competency to determine the matter before it, lacking jurisdiction over inter vivos trusts, California and its courts also lacked subject-matter jurisdiction. Moreover, an indispensable party, namely, the New York trustee, was absent.
The California Superior Court, sitting in probate, is a court of limited jurisdiction (Estate of Bissinger, 60 Cal. 2d 756, 764; Estate of Wise, 34. Cal. 2d 376, 381; Estate of Stone, 170 *172 Cal. App. 2d 533, 535). Although given continuing subject-matter jurisdiction over testamentary trusts (California Probate Code, § 1120), it does not have jurisdiction over an inter vwos trust (Auslen v. Superior Ct., 58 Cal. 2d 820, 823; Estate of Rey, 31 Cal. App. 2d 648; cf. Wilkerson v. Seib, 20 Cal. 2d 556, 562; but see California Probate Code, § 1137 et seq., as last amd., taking effect Nov. 1, 1970). Consequently, the elliptical statement in the majority opinion that the California Superior Court is a court of unlimited general jurisdiction is an unacceptable premise. It is, except when it sits in probate matters, and the California court in this case was sitting in probate. There is a precise parallel in the jurisdiction of New York Surrogate’s Court. For this reason a discussion of the New York statute and cases is relevant.
The rule frequently applied is that the Surrogate’s Court lacks jurisdiction over inter vivos trusts (Matter of Lyon, 266 N. Y. 219, 222-224; 1 Warren’s Heaton, Surrogates’ Courts, § 33, par. 11, cl. [a]; § 35, par. 3; § 36, par. 5, cl. [dd]). In Matter of Lachlan (8 A D 2d 635, revg. 16 Misc 2d 80) the Surrogate was called upon to determine if the decedent had by will exercised a power of revocation over an inter vivos trust. The Surrogate denied a motion to dismiss for lack of jurisdiction holding that the issue related to “ the affairs of the decedent ’ ’ citing section 40 of the Surrogate’s Court Act (now SCPA 201). The Appellate Division reversed, holding that “ The legal effect of the will upon the inter vivos trust may not be determined by means of a construction of the will by the Surrogate. The question is for the Supreme Court ’ ’ (id., at p. 636; cf. Matter of Mitchell, 54 Misc 2d 1038, 1039).
Similarly, in Matter of Crosby (136 Misc. 688 [Foley, S.]) the Surrogate held jurisdiction lacking to determine if decedent had properly exercised a power of appointment in an inter vivos trust. He held that the assets would pass under the trust instrument and not the will, and that the validity and effect of the exercise of the power, therefore, must be determined by the court which has ‘ ‘ jurisdiction to construe the instrument originally creating the power” (id., at p. 689). (See, also, Matter of Martin, 58 Misc 2d 740; Matter of Gray, 176 Misc. 829, 834-835 [Foley, S.], affd. 266 App. Div. 732, affd. 292 N. Y. 532.)
*173 The same approach to the limited competency of the Superior Court, sitting in probate matters, is taken in California (Estate of Cox, 8 Cal. App. 3d 168). The issue presented to the Superior Court, sitting in probate, in part in an heirship proceeding, was whether the decedents had exercised powers of appointment over a corpus of an inter vivos trust. The court concluded that the probate court was without jurisdiction. Referring to the general rule, so critical in this case too, that appointees take from the original donor of the power and not the donee, the court stated that ‘ ‘ the question of the exercise or non-exercise of the power # * * is uniformly passed upon by a court of general jurisdiction ” (id., at p. 181). Quoting from a California Supreme Court opinion, it concluded “ ‘ it would not be the court in probate which would determine to whom the trust property should go. The class entitled to take would be determined by a court of equity in an action brought by the trustee to determine that precise question ’ ” (id. citing Gray v. Union Trust Co., 171 Cal. 637, 640, supra).
In this case the respondent, Bank of America, initiated an heirship proceeding solely for the purpose of adjudicating the property rights of the several beneficiaries under the trust indenture. The Cox case (supra) as well as the cases cited in it, unequivocally indicate that the Superior Court, qua Probate Court, was without such jurisdiction.
It is fundamental, of course, that a court lacking competence in the forum State to determine an issue is without power to render a judgment valid at home, or entitled anywhere else to comity or full faith and credit. Its judgment is a sterile vanity. Nor is lack of competence in a court a defect curable by waiver, estoppel, or res judicata. (Matter of Trevor, 309 N. Y. 389, 394; Restatement, Judgments, § 7, Comments a, d; Restatement, Second, Conflict of Laws [Proposed Official Draft, part I, May 1967], § 105.) In short, the California order is a nullity there and it is strange, indeed, that it be accorded full faith and credit or even comity here.
This should be the end of the matter, but there is further infirmity in the California order.
When a dispute involves the interests of other States, a court seized with the dispute must weigh the co-ordinate responsibilities of the several States. In most instances, the dispute is *174 resolved by the forum’s choice of law; in others by abstention, based either on forum non conveniens or comity; in still others, by a mandatory declination of jurisdiction based on the absence of subject-matter jurisdiction. It is well settled that at the trust situs there is primary judicial jurisdiction for the determination of disputes involving the validity, interpretation and administration of the trust (Eestatement, Second, Conflict of Laws [Tent. Dr. No. 4], § 108a, Comment d; 5 Scott, op cit., supra, §§ 564-566). Of course, this is not to say that the State of the trust situs has exclusive judicial jurisdiction to determine questions in the administration of the trust. There are well-settled instances where other courts have properly exercised jurisdiction over such trust matters (5 Scott, op. cit., supra, §§ 565-568, 571; Eestatement, Second, Conflict of Laws [Proposed Official Draft, part III, April 22, 1969], § 267, Comment d; see, generally, Ann., Trust—Jurisdiction of Suit, 15 ALE 2d 610). As stated in Eestatement, Second, the jurisdiction of the court of primary supervision ‘ ‘ is not exclusive, and the courts of other states may exercise jurisdiction in proper cases if they have jurisdiction over the trustee, or if they have jurisdiction over the trust assets insofar as interests in those assets are concerned” (id., p. 174; see, in agreement, 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7701.10). A corollary is that Equity has no jurisdiction of a suit relating to a trust where the trust was created outside the jurisdiction of the court and where the trustee and trust res are both beyond such jurisdiction” (54 Am. Jur., Trusts, § 564, p. 440).
Exceptions are limited to where either the res or trustee were before the foreign court and where failure of justice would follow if equity withheld relief (Ann., Trust — Jurisdiction of Suit, 15 ALE 2d 610, §§ 3, 10, 20, 27). Neither the trustee nor the trust res were before the California court.
Applying these principles the want of jurisdiction on the part of the California court to hear and decide the matter is apparent. Although attempts are made to establish, somehow, a California situs by asserting an in rem adjudication based merely on the exercise of the power in California, it fails because that is not enough. Nor is this a case where the California court is seeking to reach the beneficial interest of a trust beneficiary residing in California. Under the settled rule, discussed *175 earlier, the donee of a testamentary power has no ownership in the appointive property. The property remains part of the trust corpus, ownership of which is evidenced by documents of title held in New York by a New York trustee. Moreover, the arrogation by a court of judicial jurisdiction in rem may not depend solely upon the exercise of a power of appointment by a domiciliary. Considerations of ‘ ‘ the coordinate authority of sister States ” also plays a role in assigning in rem jurisdiction over a res, especially of intangibles (Hanson v. Denckla, 357 U. S. 235, 246-247). Since the exercise of in rem jurisdiction over a New York trust by a California court would represent a substantial impairment of New York’s supervisory control over its own trusts, this factor alone precludes the existence of such jurisdiction.
The exact limits of the co-ordinate equity jurisdiction of other State courts to adjudicate with reference to interests and responsibilities flowing from a New York trust indenture need not now be considered. It suffices that under the present circumstances the California court was without power to decide the matter committed to it by the respondents-appointees. Subject-matter jurisdiction lacking, the California order is not entitled to recognition under the Full Faith and Credit Clause, or even as a matter of comity.
The same result is reached upon a different analysis.
Section 389 of the California Code of Civil Procedure provides in relevant partA person is an indispensable party to an action if his absence will prevent the court from rendering any effective judgment between the parties ”. As construed by the California Supreme Court if a complete determination of the controversy cannot be had without the presence of another party, such party is indispensable and the court may not proceed without his presence (Ambassador Petroleum Co. v. Superior Ct. 208 Cal. 667, 671-672).
The general rule is that the trustee of an inter vivos trust is an indispensable party in any proceeding where judicial consideration is to be given the administration validity, or disposition of the trust res (Hanson v. Denckla, 357 U. S. 235, 245, supra; McArthur v. Scott, 113 U. S. 340, 396; Sadler v. Industrial Trust Co., 327 Mass. 10, 13; 1 Freeman, Judgments, § 499 and cases cited; cf. 3A Moore’s Fed. Prac. [2d ed.], par. 19.08, *176 at pp. 2297-2299, par. 19.19, at p. 2581). Whether this general principle is applicable involves a consideration of the law of the rendering. State.
The cases relied upon by the respondents-appointees to show that the trustee is not indispensable not only fail to support such a proposition but inferentially suggest, if not compel, its antithesis. In Muggill v. Reuben H. Donnelley Corp. (62 Cal. 2d 239 [Traynor, Ch. J.]) a former employee sought reinstate-' ment in the employer’s retirement plan. The plan was controlled by the corporation through a retirement committee and trustee. The trustee was a nonresident and not amenable to personal service. The issue was raised as to the court’s power to enter judgment without the trustee’s presence. The court concluded that when the powers of the trustee are subject to the complete control of the creator and, significantly, the creator was presently before the court, the trustee’s presence is not required in order to resolve the dispute between- the employee and the corporation (id., at pp. 241-242). The California Supreme Court stated that were it to conclude that the nonresident trustee was indispensable under the facts of the case “ corporations could evade their obligations under retirement plans merely by naming non residents as * * * trustee.” (Cf. Thorson v. Western Development Corp., 251 Cal. App. 2d 206, 215, for the statement that ‘ ‘ A trustee under a deed of trust [is not] an indispensable party in an action brought by a beneficiary when the interest or powers of that trustee concerning the trust res are subject to the control of the trustor.”)
Both cases represent an application of a well-recognized exception to the general rule of indispensability of trustees. Where the trustee’s powers and duties are minimal thus approximating a mere stakeholder, the trustee is not indispensable in an action involving the trust corpus (Salem Co. v. Manufacturers’ Finance Co., 264 U. S. 182, 190; San Diego Water Co. v. Flume Co., 108 Cal. 549, 556, 557; Rabinowitz v. Kaiser-Frazer Corp., 111 N. Y. S. 2d 539, 547-548; 54 Am. Jur., Trusts, § 590; 90 C. J. S., Trusts, § 366).
The ratio decidendi of the cited California cases, namely, that the trustee was analogous to a passive trustee subject to *177 the complete control of the creator of the trust, is inapplicable. If the exception for indispensability is limited to a trustee who is no more than an alter ego of the controlling party before the court, he is, on the contrary, an indispensable party if he has powers independent of the settlor. Such is the situation in this case. Hence, the presence of the trustee was necessary before the California court could adjudicate the rights of the beneficiaries (see, e.g., Drath v. Armstrong, 224 Ala. 661; Lewis v. Hanson, 36 Del. Ch. 235, 255, 261, affd. sub nom. Hanson v. Denckla, 357 U. S. 235; Northern Natural Gas Co. v. Hugoton Plains Gas & Oil Gorp. 55 Del. 348, 355; Illinois Nat. Bank v. Gwinn, 390 Ill. 345; Matter of Young v. Ledden, 7 A D 2d 946, 947; 54 Am. Jur., Trusts, § 584; 90 C. J. S., Trusts, § 366; cf. Dolese Bros. Co. v. Brown, 39 Del. Ch. 1, 9; 3 Carmody-Wait, 2d, New York Practice, §§ 19.22, 19.40).
Practical considerations also commend this conclusion. To permit the respondents-appointees in this case to succeed in their attempt to circumvent New York’s primary responsibility for its trusts encourages litigants similarly situated in the future to race to other forums sponsoring more favorable rules of construction. Such a practice fosters multiplicity of litigation and might lead to inconsistent results among differing groups of beneficiaries. The risk of such practice increases where the alternative beneficiaries are also interested in the nonresident donee’s estate. In such instances the alternative beneficiaries are left with a Hobson’s choice: appear in the domiciliary probate proceedings to protect estate interests and risk an adjudication by the out-of-State court respecting the exercise of the power, or, forego protection of estate interests in order to protect whatever contingent interest they have in the appointive property. Moreover, normally incidental to this species of litigation is an intra-familial dispute between the donee’s appointees, usually his wife and issue, and the alternative beneficiaries, usually collaterals of the appointees and issue of the donor. In such disputes it is more desirable that the State of administration decide the matter rather than, perhaps, an interested forum which might favor its residents over the nonresident contingent beneficiaries.
*178 Other injustices come to mind. It may not always be the designated appointees who invoke the aid of a foreign forum. The alternative beneficiaries might seek an invalidating interpretation of the power by resort to a forum whose rules of construction require that the power be specifically exercised, whereas New York, the State of administration, would presume exercise in favor of the residuary estate. Such a decree of invalidity, if honored, would not only deprive the appointees of the appointive assets, but most likely thwart the donor’s justified reliance upon New York rules governing the exercise of powers.
These considerations when combined with the unnecessary interference by the California court in the administration of the trust, particularly after New York’s primary jurisdiction had attached and the matter was sub judice, compel nonrecognition of that court’s decree. Nor may the risks be limited by the solemn injunction that the facts in this case are “ special and unique ”. In a sense, the facts of every case are “ special and unique ” but the rules they imply are insuppressible in this as in every other case. And so long as jurisprudence impels like handed treatment for like situations, universals from particular facts will be extruded and give precedential status to any holding, and to this one too. Characterization of facts as special and unique serves only a vain attempt to lay down a one-case rule.
Accordingly, I dissent and vote to modify by reversing so much of the order as adopted the order of the California Superior Court and directed distribution of the corpus and accrued interest to the California executor, and dismissing as moot and unreviewable the appeal from that portion of the final order respecting the issuance of a commission.
Judges Scileffi, Bergan and Gibson concur with Chief Judge Ftjld ; Judge Breitel dissents and votes to modify in a separate opinion in which Judges Burke and Jasen concur.
Order affirmed, etc.

 It is most interesting that Professor Richard R. Powell has caustically criticized the type of cy pres statute adopted by California and nine other States *171 as creating a general judicial power to rewrite dispositions, barefaced, and not saved by the obviously hollow reference to a “general intent” belied by the very instrument being interpreted (How Ear Should Freedom of Disposition Go 9, 26 Assn, of the Bar Record 8,14-15, Jan., 1971).- It is, therefore, hard to accept the majority’s soft acceptance that the California court could find “on the facts before it ” that Acheson had the “ general intent ” ascribed to him, and hardly conceivable that a New York court could have similarly found on the facts and not suffered reversal as a matter of law.